Brugman v. Burr.

HENRY BRUGMAN v. C. C. BURR.

[FILED SEPTEMBER 23, 1890.]

1. **Counter-claim**: DISTINCT CAUSES OF ACTION: LANDLORD AND TENANT. The plaintiff was owner of a storehouse in L., of which defendant was tenant under a written lease, the rent payable monthly. The rent being in arrears about four months, the defendant gave plaintiff three short time, interest bearing, negotiable notes therefor. Afterwards, the plaintiff desiring to enlarge his storehouse, the parties entered into a new agreement which was indorsed on the lease, and by which defendant relinquished all his right, title, and interest in said lease, reserving the right to remove his stock within fifty days from the date thereof; Burr to have the right to go on with improvements. Within the fifty days the plaintiff pulled down the rear wall, removed a part of the roof, took up the sidewalk, and made excavation for an area in the front. The notes having become due, suit was brought thereon. The defendant set up a counter-claim: 1. Damage to his stock of hardware, kept in the store, by plaintiff's removing the roof and allowing the rain to enter and flood the storeroom. 2. Damage to his business by reason of taking up the sidewalk and excavating in front of the store. *Held,* That such damages were not the subject of counter-claim, not arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, nor connected with the subject of the plaintiff's action.

Brugman v. Burr.

2. ———: PLEADING. Before replying to the answer plaintiff moved to strike out the words of the second clause of the counter-claim as inadvertent and irrelevant, which motion was sustained. *Held*, Not reversible error.

3. ———: ———: THE OBJECTION that a counter-claim fails to state facts sufficient to constitute a cause of action, or defense to the action, may be taken at any stage of proceedings, or upon error, or appeal.

MAXWELL, J., dissents upon the first point.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*J. C. Johnston*, and *J. E. Philpott*, for plaintiff in error.

*Samuel J. Tuttle*, *contra*, cited: Code, secs. 1011, 1012; *Berggren v. R. Co.*, 23 Neb., 620.

COBB, CH. J.

This cause comes to this court on error from the district court of Lancaster county. The plaintiff in that court in and by his petition alleged the making, execution, and delivery to him, by the defendant, of three, several promissory notes, two for $200 each, and one for $210, dated February 8, 1886, and due, respectively, April 8, May 8, and June 8, 1886, and demanding judgment in the sum of $576, with interest.

The defendant, in and by his amended answer, paying no attention to the allegations of the petition, nor troubling himself as to any distinction between defense, set-off, and counter-claim, alleged that on the 28th day of December, 1883, the plaintiff, by his deed, duly executed and delivered, leased to the defendant lot 14, in block 42, in Lincoln, for a term commencing the 1st day of January, 1884, and ending December 31, 1889, for the consideration of $8,100, to be paid by the defendant to the plaintiff in installments of $135 on the first business day of each and

every month thereafter; that the consideration for the said notes sued on is for a part of the said installments so to be paid for, and on said rent and no other; that on the 30th day of April, 1886, the defendant then being in the quiet and peaceable possession and enjoyment of the said lot, and the tenements thereon, under the covenants of said lease, and then and there being engaged in the carrying on a general retail business in hardware, woodenware, tinware, and cutlery, and the plaintiff then and there desiring and intending to build an addition to the rear east end of the building on said lot, the building so occupied by the defendant, the defendant, at the instance and request of the plaintiff, executed and delivered, by his certain writing on the back of said lease, his certain deed of release, as follows, to-wit:

" For value received, I hereby relinquish to C. C. Burr all my right, title, and interest in the within lease, reserving right to remove stock within fifty days from date hereof, Burr to have right to go on with improvement in meantime. April 30, 1886."

That the word "improvement" used in said release means the taking out of the rear end of said building and the construction to said building of the said addition and no other matter or thing; that the word "stock" used in said release means the defendant's said goods and chattels, then used and employed by him in his said retail business; that on or about the 4th day of May, 1886, and while the defendant was occupying the said lot and tenements thereon, and so engaged in his said business, and thereafter up to the 14th day of June, 1886, the said plaintiff, in violation of the defendant's right to the peaceable possession and quiet enjoyment of the said premises, so to occupy the same, and in disregard of the covenants of said assignment, did wrongfully, against the protest of the defendant, enter upon said premises and remove the roof on said building, and wrongfully, and against the protest of the de-

fendant, tore to pieces and carried away the sidewalk of the immediate front of said building on the west side thereof, and did then and there dig an excavation twenty-five feet by sixteen feet, and seven feet deep, and then and there wrongfully and negligently did leave the defendant's said stock of goods exposed to the elements and exposed and subject to be stolen and carried away, and then and there for twenty days, by reason of said excavation, the defendant and his servants and the public were wholly prevented from going in and out of the front entrance and door of said building; that the defendant had a stock of goods in said building during the time of the committing of said grievances by the plaintiff, of the value of $3,000; that by reason of the said wrongful acts of the plaintiff, in so removing the said roof and so exposing the said goods to the elements, the said goods were rained upon and damaged in the sum of $600; that by reason of the said wrongful acts of the plaintiff in so exposing said goods to be feloniously stolen, without fault or negligence of the defendant, there were feloniously stolen and carried away of defendant's said stock, goods of the value of $100, no part of which the defendant has ever since recovered or received, to his damage in the sum of $100; that by reason of the plaintiff's so wrongfully removing the said sidewalk, and the said excavation, and so preventing said egress and ingress to the said building, through said front door, to himself, his servants, and the general public, he was, for said twenty days, wholly prevented from carrying on his said business, to his damage in the sum of $500; with prayer for judgment for his said damages after the taking out thereof of the amount which may be found due the plaintiff on the said notes.

The plaintiff replied to the above answer of the defendant, in which he denied that the plaintiff on the 30th day of April, or at any other time, desired or intended to build an addition to the storeroom mentioned in said counter-

claim and to the rear east end thereof only, but alleged that at that time he intended and desired to repair the said storeroom in the manner in which he did so repair the same, and that it was on that account he procured the release mentioned by paying to the said defendant a full and complete consideration therefor. He denied that the new improvements mentioned in the counter-claim meant only the taking out of the east end of the building and the construction of the addition to the east end of said building as alleged; but that it was used in its ordinary sense and included all the improvements made upon said store building, or to the same as actually done and performed thereafter, as in the summer of 1886. He further denied that the said plaintiff removed the roof from said building between the 4th day of May and the 17th day of June, 1886, but alleges the fact to be that said roof was removed long after the elapsing of the fifty days mentioned in said release and not before. He admitted that before the elapsing of the said period of fifty days he did remove the said walk in front of the said store building and dug the excavation mentioned in said counter-claim, but said plaintiff further alleges that he caused said excavation to be covered with plank at his own expense, so that neither the said defendant, nor his servants, nor the public were in any manner deprived of free ingress into or egress from said store building. And the plaintiff denies each and every allegation in said counter-claim contained as to the fact and amount of damages claimed by said defendant, and alleges that if he suffered any damages whatsoever it was occasioned by his own fault and negligence, and not by the fault or wrong of the plaintiff.

There was a trial to a jury, with a verdict and judgment for the plaintiff. After unsuccessful motion for a new trial, the defendant brings the cause up on error.

Before filing his reply, the plaintiff moved the court for an order striking from the defendant's answer and counter-

claim the following words: "And wrongfully and against the protest of the defendant tore to pieces and carried away the sidewalk in the immediate front of said building on the west side thereof, and did then and there dig an excavation twenty-five feet by sixteen feet, and seven feet deep." Also the following : "That by reason of the plaintiff so wrongfully removing the said sidewalk and making the said excavation, and so preventing said egress and ingress to the said building through said door to himself, his servants, and the general public, he was for said twenty days wholly prevented from carrying on his said business, to his damage in the sum of $500." And also the following: "And then and there for twenty days, by reason of said excavation, the defendant, and his servants, and the public were wholly prevented from going in and out of the front entrance and door of said building." Which motion was upon argument sustained and the said order passed. This order and judgment of the court constitute the first error assigned.

This assignment involves the entire answer and counter-claim of the defendant. Section 100 of the Code provides that "The defendant may set forth in his answer as many grounds of defense, counter-claim, and set-off as he may have. Each must be separately stated and numbered, and they must refer in an intelligible manner to the cause of action which they are intended to answer;" and section 101, as follows: "The counter-claim mentioned in the last section must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action."

It will be remembered that "the contract or transaction, set forth in the petition as the foundation of the plaintiff's claim," was the giving of three several promissory notes

by the defendant to the plaintiff, and while it is alleged in
the said answer or counter-claim that the consideration of
the notes sued on was for a part of the installments of rent
agreed to be paid by the defendant to the plaintiff upon
the store house or building, yet, taking the whole answer
or counter-claim together and in connection with the dates
of said notes, it is apparent that the notes were given for
installments of rent which had been earned and were past
due before the execution of the release set out in the
counter-claim. It is, moreover, quite apparent that all of
the grievances or causes of action, set out in the said answer
or counter-claim, transpired after said notes had been given
as for money due and payable, and after the said lease had
become released. While it is admitted for the purposes of
the argument of the point now.being considered, that the
defendant had a cause of action against the plaintiff for
tearing off and removing the roof of the storeroom occu-
pied by the defendant, and thereby allowing the rain to
enter, and wet and damage defendant's stock of hardware,
and another different and distinct cause of action for tear-
ing up the sidewalk and digging an excavation in front
of said storeroom, and thereby injuring defendant's trade
and business, for which defendant could have maintained
one or more suits against the plaintiff, yet it does not fol-
low that either or both of these causes of action could be
pleaded and maintained as a counter-claim against the action
of the plaintiff. These causes of action were, as described
in the pleading, one of them a trespass, and the other, if
not a trespass, was a tort of the nature of a trespass.
Neither of them arose out of the contract or transaction
in the petition as the foundation of the plaintiff's claim,
nor were they connected with the subject of the action.

The language of the corresponding section of the Code
of New York is identical with that of our own, and those
of most of the Code states, and, without citing the cases, I
assume that, under the construction given the Code by the

courts of New York, the counter-claim now under consideration would not be sustained. And I admit that many able courts and text-writers give the provision a broader and more liberal construction, yet I am unable to find any case that goes far enough to cover the one at bar.

The principle decided in the case of *Loomis, Campbell & Co. v. The Eagle Bank of Rochester*, 10 O. St., 327, appears to me quite applicable to the case at bar. In that case, to state it shortly, E. Gilbert & Co., of Rochester, in May, 1855, sold to Loomis, Campbell & Co., of Cincinnati, one thousand kegs of blasting powder, at $3.20 per keg delivered on board at Rochester. Five hundred kegs were delivered on board as contracted, and Loomis, Campbell & Co., being advised forthwith, returned a negotiable note at six months from date of shipment, for the contract price of the 500 kegs, but the other 500 kegs were never shipped. In August, following, the note was discounted by the bank for G. & Co., one of the discount committee being aware of the terms of the sale and of the fact that the last lot of 500 kegs had not been shipped. The note was not paid and suit was brought thereon by the bank against L., C. & Co., who set up, by way of counter-claim, damages for the non-delivery of the 500 kegs of powder. The bank having obtained judgment in the trial court, upon an error in the supreme court, it was held, (1) That the stipulations as to the two lots of powder are to be treated as distinct and several agreements, and not as one entire contract; (2) that a claim for damages for the non-delivery of the last lot, cannot be set up as a counter-claim to an action on the note given for the first lot, brought by the indorsee for value and before maturity, even though he had notice of the breach of the second contract at the time of his purchase. This case was followed by the same court in the late case of *Myers v. Croswell*, 45 O. St., 543.

Upon looking into the record before us, it appears that upon the 8th day of February, 1886, the defendant was

indebted to the plaintiff in the sum of six hundred and ten
dollars for rent money due under the lease held by the
said defendant for the store house in question.    For this
rent money, then in arrear, the three promissory notes sued
·on were given.    These notes were negotiable and to draw
interest at ten per cent from date.    On the 30th day of
April following, nearly three months after the giving ˌof
these notes, the parties entered into the contract expressed in
the release, indorsed on the lease, under ˙which the defend-
ant held the said store building.    By the terms of this
contract the defendant relinquished and surrendered all of
his right, title, and interest under the lease, with the single
reservation of the right to remove his stock of goods there-
from within fifty days from the said date.    The taking
up of the sidewalk, and the making of the excavation in
·front of the store, and the removal of the roof of the store
occurred some length of time after this.    No rent was ac-
cruing at the time of the commission of these acts, and so
the entire subject of rent, and more especially the rent that
had accrued by monthly installments and been settled and
capitalized and notes given for, months before, had been, and
was entirely segregated from the relations and transactions
between the parties subsequent thereto.    The tortious acts
of the plaintiff, set out in the counter-claim, are therefore
not connected with the subject of the action within the
meaning of the Code.

The question then arises, In what manner˙ ought the
plaintiff to have taken advantage of the want of a sufficient
defense, counter-claim, or set-off to the cause of action set up
in his petition?    The usual course in such cases has doubt-
less been to demur to defendant's pleading, but I have
made a long and fruitless search, in the wilderness of cases
and text-books, for satisfactory reasoning or authority on
that point, as applicable to our Code.    Section 109 of the
Code provides that "the plaintiff may demur to one or
more of the defenses set up in the answer, stating in his

demurrer the grounds thereof; and where the answer contains new matter, the plaintiff may reply to such new matter denying, generally or specially, each allegation controverted by him; and he may allege, in ordinary and concise language, and without repetition, any new matter not inconsistent with the petition constituting a defense to such new matter in the answer." A counter-claim is, in one sense, a defense; yet in most cases, as in the one at bar, it leaves the cause of action set up in the petition unscathed, but seeks to set up a more or less independent cause of action to meet, and, in whole or in part, overbalance it. The Code provides, at section 94, specifically upon what grounds a defendant may demur to a petition, but does not specify or limit, in terms, the grounds upon which a plaintiff may demur to the defenses set up in the answer. The reason for this distinction probably is, that it was the intention of the framers of the Code to confine the operation of that part of section 109, which provides for a demurrer, to such answers as are technical defenses, and hence demurrable on any ground in which they fail to constitute a defense to the cause of action set up in the petition to which they are applicable, and that a counter-claim or set-off is, for the purposes of demurrer, regarded as a petition.

In this view of the law it may well be doubted that demurrer would have lain to the counter-claim in the case at bar. Under neither of the six specific grounds of demurrer set out in the 94th section, would demurrer lie to this counter-claim, considered as an independent petition. It does state facts sufficient to constitute not one only but two causes of action; my objection to it being that such causes of action are not "arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action."

Under the practice formerly prevailing in equity, where

the answer contained no defense to the plaintiff's bill, the plaintiff might have the cause heard on bill and answered, and, unless the defendant applied for leave to amend, obtain the relief prayed for in his bill. Somewhat similar is the present practice in New York; or, in that state where the complaint does not state facts sufficient to constitute a cause of action, the objection is available on trial upon motion to dismiss the complaint. (*Tooker v. Arnoux*, 76 N. Y., 397.)

The case of *Kurtz v. McGuire*, 5 Duer, 660, was, in some of its features, much like the case at bar. The complaint stated a sale and delivery by the plaintiff to the defendant of liquors at an agreed price of $290.20, and claimed a balance of $208.06. The answer denied that he had received the quantity of liquors stated, or that they were worth, or that he agreed to pay the price named, and averred that they were worth about $200 and no more. It then proceeded thus: "And this defendant further says that on or about the 20th of October, 1856, the said plaintiff, without the knowledge or consent of the defendant, took and appropriated to his own use 87½ gallons of whisky belonging to this defendant, of the value of $2.75 per gallon, which this defendant claims to set off against the plaintiff's claim herein, and also five gallons of gin worth the sum of $1.50 per gallon, and this defendant denies that he is indebted to the plaintiff in any sum or amount; wherefore he demands that the complaint be dismissed. The plaintiff moved to strike out this part of the answer as "irrelevant and redundant," because it is not matter constituting a counter-claim or a defense, either total or partial. The general term held that the matter moved to be stricken out did not give a right of set-off, not being a demand arising on contract; and that it did not constitute a counter-claim, because it does not arise out of contract nor out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, nor is it

Brugman v. Burr.

connected with the subject of the action.   The motion was allowed.

It must be admitted that in the case at bar the matter stricken from the answer is no more irrelevant nor immaterial than that which is left; but this objection could scarcely be urged by the defendant; nor does the Code (sec. 125), which provides that redundant, scandalous, or irrelevant matter, when inserted in any pleading, may be stricken out on motion, require that all matter of that character be included in the motion.

I conclude, therefore, that there is not sufficient reason, nor is there any authority which I am able to find which would justify us in holding that the court erred in sustaining the motion to strike the matter from the answer.   The action originated in the county court and was thence appealed to the district court by the defendant, which facts, not appearing from the pleading, or briefs of counsel, were not referred to in the statement.   It also appears that after the appeal was perfected, the defendant, in the absence of the plaintiff and without notice, moved the district court to dismiss the appeal, which motion was allowed and the appeal dismissed at the cost of the defendant, and the cause remanded to the county court for further proceedings, as though no appeal had been taken.   And then two days thereafter, and at the same term, the plaintiff filed his motion in said court for an order reinstating said appeal therein for the reason that the same was so dismissed without the plaintiff's consent, and contrary to law; which motion was allowed, the said first order was set aside and vacated, and the appeal reinstated.   Which said last order and judgment of the court is the ground of the second error assigned.

The Code, at sections 1011 to 1015, makes ample provisions applicable to cases where the appellants or both parties fail, or neglect, to perfect the appeal, but there is no provision for the voluntary dismissal of an appeal by the

27

appellant, after the same is perfected, nor in any case without the consent of the appellee.   Even were there such a provision it would be within the power of the court at the same term to set aside an order allowing such dismissal, upon being satisfied that it had been unlawfully or improvidently made.

The brief of counsel on the part of the plaintiff in error, in so far as it is not devoted to the points above considered, is confined to the discussion of the verdict, its insufficiency under the evidence, and its illegality.   Neither the assignment of error involving one of the instructions of the court, nor the one alleging that the verdict is contrary to the sixth paragraph of the instructions, is discussed or presented in the brief; neither is the one of errors of law occurring at the trial.   I here copy the verdict:

"We, the jury,   *   *   *   do find that there is due from the defendant to the plaintiff upon the cause of action set forth in his petition the sum of $671.25, and we further find that there is due from the plaintiff to the defendant upon his cause of action and defense the sum of $200. We therefore find that there is due from the defendant to the plaintiff a balance amounting to the sum of $471.25, which we assess as the amount of his recovery."

This was evidently a compromise verdict.

There was a great deal of sharply conflicting testimony. The defendant himself testified that he was absent from the city Monday, June 14, 1886; that returning Tuesday morning following he found the tin roofing torn off of the store, and it having rained the night before, the two stories and the basement of the store were flooded with water and the goods damaged, in his opinion, to the amount of five or six hundred dollars.   He also testified that it continued to rain more or less during the entire day of the 15th. He also testified that his stock of goods shortly before this date was of the value of six thousand dollars.   He was subjected to a cross-examination, in which his replies to

questions could not have failed to convince the jury that his estimate of the damage was but a guess. Palmer Way, a fellow hardware dealer, who was acquainted with the stock, and was called in to examine it after the rain, agreed with defendant in his estimate of damage, but fixed the value of the stock before the damage at just half the sum fixed by him. F. E. Newton, who had formerly been in the hardware business, and who had been in defendant's store quite often, for a long time before the damage, a witness for defendant, estimated the value of the goods before the damage at from "two to three thousand dollars; twenty-five hundred, possibly." As to the amount of damage to the goods he agreed substantially with the other two. Neither of these witnesses gave such reasons, as the bases of their judgment, as would probably be satisfactory or convincing to the jury. There was no evidence as to the kind, number, or value of the different articles damaged, except as to a few stoves and packages of grass and garden seeds, in the testimony of the defendant.

On the part of the plaintiff, James Tyler testified that he was the superintendent in charge of the work of making the improvements upon the store in question; that the main roof of the old building was removed some time after the 21st day of June, 1886; that the part of the roof just over the elevator was removed prior to that time; that the shaft of the elevator was built of four corner posts and was enclosed with ⅞ flooring and had sliding doors. On cross-examination he testified that he was on the building once or twice every day during the week commencing Monday, the 14th day of June; that during that week none of the roof was or had been removed, except the roof immediately over the elevator, and that the roof was broken in the back part where the rear wall had been taken down; that he saw the workmen commence taking off the roof on Tuesday, the 22d day of June. The theory upon which this evidence was introduced,

doubtless, was that the rain which did the damage, entered the building by the elevator and the rear of the building where the wall had been removed, and the roof broken in by such removal. What effect it may have had upon the jury can only be surmised from the verdict.

At the trial, and before any witness was sworn, the plaintiff objected to the introduction of any evidence on the part of the defendant in support of his answer, for the reason that it did not contain facts sufficient to constitute a set-off, counter-claim, or any other defense. We often see this proceeding in bills of exceptions, but I do not remember any case where effect was given it. Where a petition, and so, also, doubtless, a cross-petition, setting up a counter-claim, fails to state facts sufficient to constitute a cause of action, the defendant in the one case and the plaintiff in the other, waives nothing by failing to make objection either by answer or demurrer, but this objection, as well as that the court has no jurisdiction of the action, may be taken at any stage of proceeding. (See Code, sec. 96.)

By taking the verdict of a jury, the admitted claim of the plaintiff was cut down from $671.25 to $471.25 by a cross-bill which contained no legal counter-claim. The defendant now asks for a new trial on the ground that plaintiff's claim was not cut down enough. I think that it would be both illogical and idle to grant it.

The judgment of the district court is

AFFIRMED.

NORVAL, J., concurs.

MAXWELL, J., dissents as to first point of syllabus.