## NEBRASKA NATIONAL BANK OF OMAHA V. HENRY W. PENNOCK.

FILED MAY 19, 1898. No. 8086.

Action on Renewal Note: FAILURE OF CONSIDERATION: EVIDENCE. Where a party defendant gave his promissory note in renewal of his past due note which had been given partly in consideration of the conveyance to him of certain lots by the payee named on both notes, such maker cannot defeat an action against him on the renewal note, in the hands of an assignee thereof before .due, by showing that, at the time when said renewal note was executed, the payee promised to cause improvements to be made which would enhance the value of the said lots; the time fixed for the performance of such promise being subsequent to the date when the note was, in fact, assigned to plaintiff.

ERROR from the district court of Douglas county. Tried below before HOPEWELL, J. *Reversed.*

*Warren Switzler,* for plaintiff in error.

*Louis D. Holmes* and *Henry W. Pennock, contra.*

RYAN, C.

This action was begun in the county court of Douglas county, from which court, by appeal, it was taken to the district court, in which there was a trial without a jury and a finding and judgment in favor of the defendant. The recovery was sought by plaintiff on a promissory note in these words and figures, to-wit:

"$322.04. OMAHA, NEBRASKA, August 13, 1890.

"On the 13th day of January, 1891, for value received, I promise to pay to the order of the Patrick Land Company of Omaha three hundred twenty-two and .04 dollars, at its office in Omaha, Nebraska, with interest from this date at the rate of eight per cent per annum, payable semi-annually. In case this note is not paid at maturity, it shall bear interest at the rate of ten per cent per annum until paid. HENRY W. PENNOCK."

The petition was in the ordinary form. The answer contained an averment that said note was indorsed after maturity, and there was a stipulation to the effect that before maturity said note was transferred by a separate instrument, as collateral security for a note of $5,000 given by the Patrick Land Company to plaintiff. It was further averred in the answer that the note sued on was given to the Patrick Land Company for the purpose of renewing notes held and owned by said company then past due, and subject to all defenses in the hands of said company; that no consideration was given defendant for such renewal; that the same was given as an accommodation to said company and at the special instance and request of the officers of said company. Plaintiff in this action is the assignee of the renewal note above referred to, and its right to recover cannot be defeated by reason of transactions preceding, and independent of, the making of that note. (*Brugman v. Burr*, 30 Neb. 406.)

With respect to the renewal notes, of which that in suit was one, defendant in his answer alleged that at the time of making such renewals the Patrick Land Company entered into further and renewed agreements that a street car service from the center of the city, operated by electricity, would be provided by said company during the coming fall; that said service would be a continuous street railway service from the center of the city of Omaha through Dundee Place near the lots of defendant—the cars to run at intervals of not to exceed fifteen minutes until 10 o'clock at night; that the note sued on was given in renewal of said former notes upon such express agreement and representation of said company, and without such agreement and representation defendant would not have renewed the former notes then past due and in the hands of the company. It was alleged in the answer that there had been no compliance by the Patrick Land Company with said agreement and representations, by reason whereof defendant had suffered damage in the sum of $1,500. There were other

facts pleaded in the answer, but they need not be described, for the finding of the court was limited to the above matters, as clearly appears from the language in the journal entry of its final judgment: "That the defendant, by reason of the failure of the Patrick Land Company to build the street car line, provide transportation, and make the improvements in pursuance of the agreements made at the time of making said note, suffered damage in the sum of $1,500; that the amount due on the note is $439.58, and that the consideration for said note has heretofore failed." In regard to the renewal of the note in suit there was no evidence except the testimony of the defendant, which was as follows:

Q. What was the inducement to you to secure the renewal of former notes, the note in suit being one of such renewal notes?

A. I would not have made this renewal—would not have given this note in renewal of notes then past due unless Mr. Allen and Mr. Kurtz, as officers of the company, had then agreed to—I have previously stated what the agreement was—I wish to refer to the former agreement now—unless Mr. Allen had made statements to me which I have outlined in my testimony before this, relative to the extension of the street car service to Dundee within the coming fall of 1890.

The conversation above alluded to had previously been thus described in the testimony of the defendant:

Before executing this last note which was to take the place and be in renewal of those other notes I have mentioned I went to the office of the Patrick Land Company and had several conversations with Mr. Allen, who was then the vice-president, and Mr. Kurtz, who was the secretary at that time, in regard to Dundee Place. At that time Mr. Allen informed me that he wished that I would take up these notes past due, and I complained that the company had not fulfilled its agreement to give us rapid transportation, and that it had been impossible for me to sell the lots and that I was unable to meet the notes;

and he said he wanted to get them into proper shape; he did not want to carry this past-due paper and wanted me to fix it up. And I think nothing was done at the first meeting. Afterwards, we had a conversation in which he said that the company was negotiating with the Omaha Street Railway Company and that they had practically closed its negotiations; that they had arranged with them to extend its Farnam street line through Dundee Place in the vicinity of my lots, and that the service would be not to exceed fifteen minutes between cars, and it would run until 10 o'clock at night, and that the service should be one continuous service from the center of the city; and he even went so far as to ask me to see Mr. Murphy about it. He said this was to be done within a few months—the coming fall—and this was, I think, in the summer of 1890, and he said in the fall it would certainly go out there; that they had made the arrangements and they would push it through to completion and see that rapid transportation was had.

Q. What was then done about giving a renewal of the notes?

A. I said to him, with that understanding, I would give him new notes for the old ones and place the paper in better shape for the company.

By the testimony of defendant it was disclosed that in the latter part of the year 1888 he had purchased nine lots in Dundee Place from the Patrick Land Company for $9,200, of which some amount, not stated, was paid in cash, and, for the balance, notes were given secured by mortgages on the lots purchased; that without the improvements agreed to be made these lots were worth in 1890, $500 each, or $4,500 in all, and that in the years 1888, 1889, and 1890 a great many lots in Dundee Place were sold at prices ranging from $1,000 to $1,250 each. By his answer the defendant admitted that in December, 1888, he sold five of the nine lots bought by him of the Patrick Land Company, but there is no showing in the record

of the amount realized by this sale. The facts just noted make clear two propositions, and these are: First, that there has not been a total failure of consideration; and, second, that defendant cannot rescind, for he cannot convey to the company the five lots which he has sold. His remedy, if any, is of necessity confined to compensation in damages for the failure of the Patrick Land Company to procure street car service of the character above indicated. The note sued on was dated August 13, 1890, and was due January 13, 1891. It was transferred to plaintiff on September 5, 1890. The street car service from the center of Omaha, under the agreement relied on by defendant, was not required to be put in operation until the fall of 1890. When the note was transferred the time limited for compliance with the Patrick Land Company's agreement had not yet expired. A transfer by an instrument separate from, and independent of, the note, while it operated to convey the title, did not cut off equities or defenses, as would have been done had this negotiable note been regularly indorsed. (*Doll v. Hollenbeck*, 19 Neb. 639; *Colby v. Parker*, 34 Neb. 510; *Gaylord v. Nebraska Savings & Exchange Bank*, 54 Neb. 104.)

But was there such an existing equity or defense, at the time this note was transferred, that defendant can now avail himself of it to defeat a recovery on the note? The agreement or representation, as it is called, which the defendant seeks to avail himself of, was in no sense a representation of an existing fact. There is a class of cases with which this should not be confounded. Illustrations of this class are found in the sales of machines accompanied by warranties that such machines will do good work. This does not amount to a promise of the vendor to do anything in the future, but it is a representation that the construction is such that, on trial, the machines will be found to operate in the manner described. In the case under consideration it is even doubtful whether the promisor could be said to have undertaken anything more than to procure the Farnam street

line of railway to be operated through Dundee Place. Conceding the correctness of the construction given the alleged agreement by the district court, there is presented the question whether or not an independent agreement of the payee to perform a stipulated service in the future, for the benefit of the maker of the promissory note, so inheres in that note as to defeat, to the extent of damages for the non-performance of such promise, a recovery upon it in the hands of one to whom such note has been transferred previous to the time fixed for the performance of such service. In *Salladin v. Mitchell*, 42 Neb. 859, Post, J., in the delivery of the opinion of this court, said: "We do not rest our conclusion  *  *  *  but upon the proposition that the right of set-off existed, according to well established equitable principles, before the adoption of the Code, and that the assignee succeeded to the rights of the insolvent banking company as they existed at the date of the assignment, and no other or greater rights. The authorities bearing upon the proposition are not, it is conceded, altogether harmonious, but the rule as above stated has the support of a decided majority of the courts, as well as text-writers, and rests upon the more satisfactory reasons." In the case in which the above language, fortified by numerous citations, was used the assignee of the Northwestern Banking Company had brought an action for the foreclosure of a mortgage executed to it by the Mitchells. They answered that before the failure and assignment of the banking company they had sold the mortgaged property to one Borchers, who assumed payment of the mortgage, and by whom and for whose benefit deposits had been made with the banking company of sums aggregating a sufficient amount to have discharged the mortgage, before the failure of the banking company, and upon this showing, sustained by sufficient evidence, it was held that the district court had properly adjudged said mortgage to have been fully paid.

Another line of cases holds that where parties have

claims against each other, not yet due, and there is an assignment of one of these claims, the other cannot be pleaded as a set-off in a suit by such assignee. There is not a uniformity of holdings on this point, and it is now noticed, and adjudged cases are cited in support of it, to illustrate the extent to which some courts enforce the rule that a set-off, to be available against an assigned chose in action, must have had such a status at the time of such assignment that an independent action might have been maintained upon the alleged set-off. (*Martin v. Kunzmuller*, 37 N. Y. 396; *Adams v. Rodarmel*, 19 Ind. 339; *Myers v. Davis*, 22 N. Y. 489; *Kinsey v. Ring*, 53 N. W. Rep. [Wis.] 842; *Francis v. Leak*, 33 N. E. Rep. [Ind.] 807.) In the case under consideration the defendant gave his negotiable promissory note payable at a date seventeen months distant. He testified that he gave this note, not on the consideration, but with the understanding, that an electric street railway would be constructed in the fall succeeding the month of August in which the note was executed. Before the lapse of the time for the construction of the railway this note was transferred to plaintiff. It is possible that the defendant regards this right to set up the failure to perform as being within the provisions of our statute defining a counter-claim. By section 101, Code of Civil Procedure, a counter-claim which may be pleaded "must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of the *contract or transaction* set forth in the petition as a foundation of the plaintiff's claim, or connected with the subject of the action." The provisions as to parties between whom a counter-claim may be pleaded are not material in view of the facts of this case. By the other provisions of the section the subject-matter of counter-claim is classified under two heads: First, the counter-claim must arise out of the contract or transaction set forth in the petition as the foundation of plaintiff's claim; or, second, it must be

connected with the subject of the action. In this case it may be conceded that the promise to secure the construc-tion of the street railway through Dundee Place influ-enced the defendant to sign a promissory note in renewal of another, or of others of his notes, then past due. This promise was to perform a certain act, or procure it to be performed, at quite a distance of time in the future. When this note was executed there existed no right of counter-claim in favor of defendant. His written under-taking, as expressed by his promissory note, was to pay a sum of money certain, at a fixed time, to the order of a company named. If he had desired to condition his lia-bilities on the performance of an independent act by the company, he should have so qualified his undertak-ing. The counter-claim, as he now seeks to assert it, did not become subject to compensation by an action for damages until long after another party had acquired ownership of the negotiable instrument put in circu-lation without condition or restriction. His reliance for performance was upon the promise of the Patrick Land Company, and for its failure to perform, his remedy, if any, is against that party. For the error in the allow-ance of the defendant's set-off or counter-claim the judg-ment of the district court is reversed.

REVERSED AND REMANDED.