STEPHEN G. AUSTIN, Receiver of the Commercial Bank of Buffalo, Appellant, v. LEVERETT RAWDON and DAVID GROESBECK, Respondents.

A complaint which alleges a joint agreement by the defendants to deliver up specified securities, demand therefor, and that the defendants wrongfully refused to deliver them, and have wrongfully disposed of and converted them to their own use, to the great damage of the plaintiff, and praying judgment for the value of the securities, with interest, as the damages sustained by the plaintiff by means of the premises, states a cause of action on contract and not *ex delictu.*

The allegation of a wrongful refusal by the defendants to deliver the securities and a wrongful disposition and conversion thereof, by them, to their own use, must be construed as an averment of a breach of the agreement and not as the gist of the action.

If judgment is recovered thereon against a defendant who was not served with process, he may be proceeded against, as one "jointly indebted upon a contract," under section 375 of the Code.

(Argued September 23, 1870; decided December 28, 1870.)

---

* See the case of *Hight* v. *Sackett* (34 N. Y., 447), holding that a legatee could not be regarded as an assignee, within the meaning of the same section of the Code.—REP.

APPEAL from a judgment entered upon an order of the General Term of the Supreme Court, in the eighth district, affirming a judgment of the Special Term dismissing a proceeding taken against the defendant, Groesbeck, under section 375 of the Code of Procedure, with costs.

The facts are sufficiently stated in the opinion of the court.

*John H. Reynolds* and *Amasa J. Parker*, for the appellant, cited *Campbell* v. *Perkins* (4 Seld., 430); *Brown* v. *Treat* (1 Hill, 225); *Green* v. *Green Bank* (2 Marshall, 485); *Corbett* v. *Packington* (6 Barn. & Cress., 268); *Brown* v. *Sanford* (2 Salk., 440); *Kennedy* v. *Stalworth* (18 Ala., 288); *Marquat* v. *Marquat* (2 Kern., 336); *Emery* v. *Pease* (20 N. Y., 62); Jacob's Law Dic., "Debt," "Trover;" 1 Sanders' R., 218; 2 id., 343, 366; 1 Rol. Abr., 600.

*John Ganson*, for the respondent, cited 2 Burrill's Pr., 315; Form., 470; 2 Chitt. P. C., 836; *King* v. *Fitch* (1 Keyes, 432, 440); *Orange Bank* v. *Brown* (3 Wend., 158); *Brower* v. *Hill* (1 Sand., 629); *Union Bank* v. *Mott* (27 N. Y., 633); *Murray* v. *Burling* (10 John., 172); *Bissell* v. *Drake* (19 John., 66); *Hayes* v. *Riddle* (1 Sandf., 248); *Kellogg* v. *Olmsted* (6 How., 487); *Stannard* v. *Mattice* (7 How., 4); *Robinson* v. *Frost* (14 Barb., 536); *Rider* v. *Whitlock* (12 How., 208); *Oakley* v. *Aspinwall* (4 Comst., 513); *White's Bank* v. *Ward* (35 Barb., 637).

LOTT, Ch. C. The only question presented for our decision is, whether this is an action *ex contractu* or *ex delicto*. To determine this, it is necessary to examine the complaint with care. It alleges that the Commercial Bank of Buffalo, of which the plaintiff had been appointed receiver, did, previous to such appointment, deposit in the hands of the defendants certain securities, being evidences of debt, consisting of Illinois State scrip and Michigan State warrants, and a note or bill made by G. H. Huddell & Co., indorsed by Walbridge & Hayden, all of which were the property and effects of the said bank. That the plaintiff on the 21st day

of January, 1842, was duly appointed such receiver, and that the said bank duly assigned, transferred and set over to him all its property and effects.

It then avers that after the plaintiff had entered on the duties of his receivership, a controversy arose between him and the defendants in the settlement of certain demands made by them against the bank and of certain debts due from them to it and the estate thereof, and that in pursuance of the statute in such case made and provided, referees for the determination of the said controversy were appointed. That on the trial thereof (the defendants having previously recovered a judgment in their name against the said Walbridge & Hayden upon their indorsement of the said note or bill) the plaintiff, as such receiver, and the said defendants entered into an agreement, in and by which it was among other things mutually agreed in the words and figures following, to wit:

" The following securities are under the control of said Rawdon & Groesbeck, which they claim to hold as collateral to their account:

| | |
|---|---|
| George W. Hatch's note for about............... | $4,000 |
| "          "          "       ............... | 3,000 |
| Illinois State scrip at par value ................ | 11,000 |
| Michigan State warrants...................... | 6,000 |

" Judgment in Rawdon & Groesbeck's favor against Walbridge & Hayden.

" The notes against George W. Hatch are to be delivered to said receiver, the said Rawdon & Groesbeck abandoning all claims to them."

" The scrip, warrants and judgment are to be placed in the hands of A. D. Patchin, of Buffalo, to be held by him subject to the ultimate rights of the parties hereto ; and if this matter shall be ultimately decided so that said Rawdon & Groesbeck will be entitled to them, said Patchin is not to deliver them to said Rawdon & Groesbeck until after ninety days' notice by Rawdon & Groesbeck to said receiver. The said scrip, State warrants and judgment are withdrawn from this reference and are not to be affected thereby ;" that

further proceedings were subsequently had before the referees, which resulted in a report by them that there was due from the said defendants to the said plaintiff, as such receiver, the sum of $4,017.95; that a motion, afterward made by the defendants to the Supreme Court, to set aside the said report and grant a new trial, was denied, and that such decision was on appeal to the Court of Appeals in all things affirmed.

It then alleges, that the said defendants never did place in the hands of the said A. D. Patchin, the said scrip, warrants, and judgment; that the defendants have collected the said judgment in whole or in part; " that by the determination and judgment of the said referees it was adjudged and determined, that the defendants had no claim, or balance, or demand, against the said Commercial Bank of Buffalo, upon the matters in controversy as aforesaid, over and above the debts due from them to the said bank; " that the said securities were at all times the property of the said bank, up to the time of plaintiff's appointment as receiver, and that the title thereto thereupon became, and was, and ever since has been, vested in him as such receiver; and that after such determination of the said referees, " the same should have been delivered to the plaintiff in pursuance of the said agreement."

It then avers that the plaintiff, after such determination, " demanded of said defendants the said securities as such receiver, but the defendants wrongfully refused to deliver them to him; but on the contrary thereof, the said defendants had, as plaintiff is informed and believes, wrongfully disposed of all the aforesaid securities, and converted them to their own use and benefit, to the great damage of the plaintiff as such receiver."

The plaintiff then claimed a judgment against the said defendants, in his behalf as such receiver, for the entire value of the said securities, with interest thereon from the time of the determination and report of the said referees, to wit, for the sum of $25,000, the damages by him, as such

receiver, sustained by means of the premises aforesaid, and for the costs of this suit.

These allegations in the complaint clearly show, that the Illinois State scrip, the Michigan State warrants, and the note of C. H. Huddell & Co., referred to therein, were originally the property and effects of the Commercial Bank, and also, that they came lawfully into the possession of the defendants by the deposit thereof with them, by the bank, and that such possession was rightfully held by them at the time of the plaintiff's appointment as receiver.

It is not stated for what purpose such deposit was made. It is, however, fairly inferrable from the controversy that arose between the plaintiff and defendants, in reference to the mutual claims and demands made by and against each other, the subsequent agreement entered into between them (a judgment having previously been recovered on the said note by the defendants, and being treated therein as representing it, and as substituted therefor), and the proceedings before the referees, and their report, that the defendants were partners under the firm name of Rawdon & Groesbeck, and that the said securities were placed in their hands "as collateral to their account" against the bank; and it appears that the judge, who tried the issues on the summons to the defendant, David Groesbeck, to show cause why he should not be bound by the judgment that had been recovered against both of the defendants, as joint debtors, in this action, on the service of the summons therein, on the defendant, Rawdon, only, in the same manner as if he had also been originally summoned, has found that the defendants were partners under said firm name as bankers and exchange brokers in the city of New York, at and during the times the transactions took place between the bank, said receiver and the defendants in regard to the security particularly set forth in the said complaint, and for several years prior to the failure of the said bank, and that the said securities were deposited by the bank with the defendants as collateral security to their account against the bank. The defendants had, therefore,

the right to retain and hold the securities until the settle-
ment of that account, and the plaintiff on his appointment
as receiver acquired the title of the bank thereto subject to
such right.    There was an implied agreement or contract on
the part of the defendants, resulting from the nature of the
original transaction between them and the bank, that the
securities should be returned to the bank on the settlement
and satisfaction of that account by the bank, which was
recognized by the portion of the agreement between the
plaintiff and the defendants particularly set forth in the com-
plaint.    That agreement did not alter or change the relative
legal rights of the receiver and the defendants in relation to
those securities, but it merely provided that they were to be
placed in the hands of A. D. Patchin, to be held by him
subject to the ultimate rights of the parties thereto, and if the
matter in controversy between them should be ultimately
decided, so that Rawdon & Groesbeck would be entitled to
them, said Patchen was not to deliver them to Rawdon &
Groesbeck until after ninety days notice thereof, from them
to said receiver.    Upon the report by the referees that the
sum of $4,017.95 was due from the defendants to the plaintiff
as such receiver upon the said matters in controversy and the
subsequent adjudications by the Supreme Court and the
Court of Appeals in reference thereto as set forth in the
complaint—the plaintiff was legally entitled to the said scrip,
warrant and judgment, freed and discharged of all claim and
demands on the part of the defendants—and they were bound
by and under the implied agreement or contract resulting
from the nature of the original transaction to which I have
referred, to deliver the scrip and warrant, and transfer the
judgment to the plaintiff on his demand upon them therefor.
Their refusal to comply with that demand was a breach of
that implied agreement or contract, and they were properly
liable for the damages sustained by the plaintiff by reason or
in consequence of such breach.    The allegations of the com-
plaint to which I have specially referred in my consideration
of the case thus far (having hitherto not considered the state-

ments subsequently made in the complaint, relative to the matter of the defendants' refusal to deliver the securities and the disposition and conversion thereof by them), clearly show a cause of action founded on contract and not in tort. The conclusion would be the same, if the facts stated in the complaint only showed that the securities were deposited by the bank with the defendants without any agreement that they should hold them as collateral security for their account against the bank. In that case there would have been an implied agreement to return them on demand. Therefore, when the demand was made upon the defendants and they refused to deliver them, a cause of action founded on that contract arose.

It will now be proper to examine whether those subsequent statements, which as before stated I have not yet considered, make the action one for the conversion of personal property. For that purpose it will be useful to state them as contained in the complaint. It, after alleging that the plaintiff made a demand of the securities of the defendants, says that "the defendants wrongfully refused to deliver them to him; but on the contrary thereof, the said defendants have, as the plaintiff is informed and believes, wrongfully disposed of all the aforesaid securities and converted them to their own use and benefit, to the great damage of the plaintiff as such receiver." Do these statements so affect those previous allegations as to change the complaint from what it would have been without them (one on contract as before shown) into one for the wrongful conversion of the property? I think not. Every breach of a contract may, in a qualified sense, be considered a wrong. It is a violation by one party of a right to which the other was entitled, and the allegation that the defendants " *wrongfully* refused " to deliver the securities is, in legal effect, no more than if the word wrongfully had been omitted. The refusal was in violation of the plaintiff's right, and that gave him a perfect right of action, and it was necessary to allege such refusal to show a breach of the defendants' contract.

The statement that the refusal was wrongful, was a part of the allegation of the breach. It was not necessary to give the right of action. The declaration in an action of assumpsit, under the practice and forms of pleading, before the adoption of the Code, generally in alleging a breach of the defendants' undertaking, stated that intending craftily and subtilely to deceive and defraud the plaintiff, refused to fulfill it, although often requested so to do, terms as strongly expressive of a wrongful refusal as if it had been so stated.

The other statements, although they allege a wrongful disposition by the defendants of the securities, and a conversion thereof by them to their own use, are part of the allegation averring the breach of the defendants' contract, adding force it may be conceded to such averment, but they do not when construed in connection with the previous allegations, showing the contract and the defendants' obligation under it, make the complaint one for the wrongful conversion of the property, or what would have, under the system of pleading before the Code, to which I have referred, been a declaration in trover.

Such an action was, in its origin, for the recovery of damages against a person who had found goods and refused to deliver them on demand to the owner, but converted them to his own use; but by a fiction of law, it was at length permitted to be brought against any person who had come in possession by any means whatever of the personal property of another, and which he had subsequently sold or converted to his own use without the consent of the owner, or refused to deliver to him on demand thereof. The gist of the action was the fact of the conversion of the property. It was necessary to state in the declaration that the plaintiff was possessed of the property as his own property, and that it came to the defendants' possession *by finding*, and that he had converted it to his own use. (See 1 Chitty's Pleadings, p. 147, etc.; 2 id., p. 369, etc.)

The controlling distinction between a declaration on contract and in trover was, that in the former the cause and

right of action was founded on a contract which was counted on in the declaration and a failure of the defendant to perform it; whereas in the latter the basis of the action was the finding of the property and the wrongful conversion thereof. Although the form of all actions at law and suits in equity, and all the forms of pleading existing before the Code were thereby abolished, and it is sufficient to state in a plain and concise manner the facts constituting the cause of action (§§ 69, 140 and 142), yet the substantive distinctions between actions on contract and those founded in tort still exist.

The second section of the Code defines an action, to be an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense, clearly recognizes the distinction between actions *ex contractu and ex delicto.*

In the present action, the facts stated in the complaint, as I have before stated, show that the plaintiff was entitled under the contract set forth therein, to a return of the securities in question, and that this action was for the enforcement and protection of that right.

I will add, that although all the securities that were originally deposited with the defendants were personal property, for which an action of trover, under the old system, could be maintained, or for the detention or conversion of which an action under the present system can be brought, it is shown that the note had become merged in the judgment which had been recovered thereon, and that such judgment was claimed by the plaintiff. That was not a species of property for which such an action could be maintained; and if the facts relating to the other securities admitted of a doubt as to the nature of the cause of action, so far as it affected those, or if they might be construed either as creating a cause of action on contract, or in tort, the fact that the cause of action in relation to the judgment was not in tort, would properly characterize the entire action as one on contract.

The views above expressed lead me to the conclusion, that the judge who tried the issues between the plaintiff and the defendant, Groesbeck, erred in deciding that this is an action for the wrongful conversion of personal property, and not an action on contract, and that the judgment founded thereon dismissing the proceeding against him, and the judgment of the General Term in affirmance thereof, should both be reversed and a new trial ordered, costs to abide the event.

Judgment reversed and new trial ordered, costs to abide the event.*

---

* See *Conaughty* v. *Nichols* (3 Hand., 83), where allegations in the complaint of a conversion were disregarded. The case of *Austin, Receiver*, v. *Rawdon & Groesbeck* in the Court of Appeals, reported 3 Hand., 155 (overruling same case in Supreme Court, reported 44 Barbour, 435), arose on a motion to set aside a judgment entered upon the report of the referees, referred to in the foregoing opinion.—REP.