WILLIAM BRATHWAITE, Plaintiff and Appellant, *v.* HENRY C. AIKIN, HARVEY HARRIS, as Administrator, etc., THOMAS C. POWER and JOHN W. POWER, under the name and style of BENTON LINE, Defendants, WILLIAM REA and GEORGE F. ROBINSON, copartners, etc., J. C. KAY and WOODRUFF MCKNIGHT, copartners, etc., A. W. CADMAN and JOSEPH MCC. BIGGERT, Intervenors and Respondents.

**1.  Intervention to Obtain Judgment Against Defendant— Equities Between Plaintiff and Intervenor.**

Where an intervention complaint was framed on the theory only of co-operation by the intervenors with plaintiff in the effort to secure judgment against defendants, and the prayer for relief merely requested a payment of the money into the hands of a person to be designated by the court, no claim in the complaint or on the trial being made that the rights of the plaintiff and the intervenors, as between themselves, were to be adjusted in the action, but the verdict being a joint verdict, in favor of the plaintiff and intervenors, for the amount of the recovery, *held* error to award to intervenors any specific portion of the recovery against defendants, there having been no adjustment of the equities between plaintiff and intervenors. Such portion of the judgment reversed, with directions that rights of plaintiff and intervenor be settled as between themselves.

(Opinion Filed January 15, 1891.)

*A*PPEAL from district court, Burleigh county;  Hon. WM. H. WINCHESTER, Judge.

*George W. Newton,* for appellant; *Louis Hanitch,* for intervenors.

CORLISS, C. J.  By a complaint in intervention the plaintiff in the original action is sought to be made defendant as to the intervenors. The action has for its object the recovery of freight for the transportation of certain army stores by water from Bismarck, Dak., to Ft. Buford, Mont. The judgment, so far as it fixed the liability of defendants, has been affirmed. See Braithwaite v. Power, *ante,* 455, (decided at this term.) The plaintiff now assails that portion of it which awards to the intervenors the greater share of the recovery. The most that ap-

pellant asks on this appeal is that the judgment in this respect be modified by directing the payment of the amount thereof into court subject to the further order of the court. We think appellant's prayer should be heeded. A glance at the facts will make this apparent. The vessel in which were the goods, to recover freight for the transportation of which this action was instituted, was the steamer Eclipse, and she was engaged in that kind of business under an arrangement embodied in a written contract between the plaintiff and the intervenors. This agreement recited the facts that this steamboat was at the time it was made hopelessly involved in debt, and was about to be sold at marshal's sale, and that certain of the parties to the agreement were creditors of the vessel. The agreement then continues:

"And the parties hereto, fearing a sacrifice, to protect their several interests, and to prevent such a sacrifice, and form a fund for building up said boat, and afterwards, if knocked down to them, to provide a working capital to manage and run said steamboat, covenant and agree as follows:

"*First.* That each of said parties shall contribute into a general fund the respective amounts set oppositie their names: Capt. W. Braithwaite, $2,500; John D. Biggert, $2,500; Robinson, Rea & Co., $2,500; Cadman & Co., $100; Kay, McKnight & Co., $450. —which several amounts are to be paid in cash, by the respective parties, to said parties of the first part, in case said steamboat is purchased by them as herein provided, or so much thereof as may be necessary to be used for paying so much of the bid as may be necessary to be paid in cash, and the remainder to be used as working capital.

"*Second.* That, in addition to said cash fund, the several parties are to contribute as capital the amount of their respective claims against said steamboat, and, in case said steamboat is bought in by the parties hereto, their claims are not to be paid at once, but be receipted for by them, and afterwards paid, as hereinafter provided for.

"*Third.* When the said steamboat is put up at marshal's sale, the same is to be bidden for by the several parties of the first part to such an amount as a majority in interest in said amount of $10,000 may determine, and to be put in the name of W.

Braithwaite and John D. Biggert as trustees, to be held by them thereafter as such trustees for the following uses and purposes: First, that the same be managed and run in the interest of all of the parties hereto, said W. Braithwaite to act as captain, and John D. Biggert as financial agent; the said Braithwaite to receive a salary of one hundred and fifty dollars per month, and said John D. Biggert to receive a salary of one hundred dollars per month during the time she is run in the interest of the parties hereto.

"*Fourth.* Out of the earnings of the said steamboat the respective claims of said parties of the second part are first to be paid, and, second, the full amount of their respective portions of said $10,000 advancement is to be paid; and when said parties of the second part are fully paid, then this trust shall cease and determine, and the said steamboat shall remain wholly to the use and benefit of the said W. Braithwaite and John D. Biggert, their executors, administrators, and assigns. Signed and sealed and delivered this 4th day of February, A. D. 1880, with our hands and seals."

The name of Joseph McC. Biggert was afterwards substituted for that of John D. Biggert in the agreement.

It appers that under this arrangement the money subscribed was paid, and the vessel bought therewith at the marshal's sale, the title being taken in the names of plaintiff and Biggert. The vessel was being operated under the contract, when this freight was earned. The intervenors, until paid under the contract, are clearly entitled to the net earnings of this vessel, after deducting the expenses of operating her, and the necessary expenses of collecting the funds which are embraced within the trust created by the agreement. Plaintiff does not appear to question this, but insists that the intervention was not upon the theory of a litigation of the rights of the parties as between themselves, but merely for the purpose of joining plaintiff in the prosecution of the action. The allegations of the intervention complaint, its prayer for relief, the procedure upon the trial, the joint verdict rendered without objection—all justify the plaintiff in assuming that such was the sole object of the intervention. There is no suggestion that plaintiff has been guilty of any

dereliction of duty as trustee, or that he is not abundantly able to respond to the beneficiaries for all moneys to which they may be entitled under this trust. There was a good reason for intervenors stepping into the case, aside from the purpose of litigating their exact rights to the fund as between themselves and plaintiff. Here was an important controversy, in which they were largely interested financially, and it was entirely natural that they should wish to have some voice in and control over the prosecution of the case. The averments of the complaint and the prayer for relief fully warranted the belief that such was the sole motive of the intervention. Had it been the design of the parties to settle by their intervention all their conflicting rights, the complaint in intervention would naturally have averred how much was due upon their respective debts, to secure which this trust was created. These were first to be paid out of the earnings of the boat. It is averred that they have not been paid, for it is stated that the intervenors have never received any portion of the earnings of the vessel. But it is nowhere alleged how much these claims amount to. Had the object of the intervention been to have a full settlement of the trust with respect to this fund, the amount of the claims first payable out of such fund under the trust would have been set forth in the complaint in intervention.

The prayer for relief does not necessarily control the scope of the relief that will be granted, but it certainly does throw light upon the purpose of the pleader, especially when in accord with the spirit of the pleading. There is no prayer for an accounting; there is no request for judgment in favor of the intervenors against either the defendants or the plaintiff. On the contrary, the intervenors expressly negative such a theory of their intervention by demanding that the money be paid to Biggert, or to some proper person to be designated by the court, to be applied as provided for in said contract. Such person and not the court, was to distribute the fund. After the intervention had been proceeded with on this theory down to the application for judgment, it was not competent for intervenors to make a sudden change of front to the surprise and disadvantage of plaintiff. It is evident that a full accouting between the parties

has not been had.   Justice demands that plaintiff should be given an opportunity to make such claims against the trust funds as are proper to be allowed.   As plaintiff appears to raise no objection that the accounting be had upon this intervention, the judgment is modified, in so far as it directs certain portions of the money to be paid to plaintiff and intervenors, respectively, and the court below is directed to enter judgment expunging such provisions from the original judgment, and ordering that the money be paid into court as a trust fund subject to the further order of the court, the rights of the respective parties thereto to be subsequently determined in this action, and giving the intervenors twenty days within which to amend their complaint in intervention to secure an accounting of this trust fund, and the plaintiff forty days in which to serve amended answer; costs to be awarded appellant.