## WM. BRAITHWAITE *vs.* HENRY C. AKIN, *et al.*

Opinion filed July 24th, 1893.

### Intervention—Counterclaim Not Connected With the Subject of the Action.

Plaintiff and interveners having recovered judgment against the defendants, the interveners claimed the money under a written contract with plaintiff. (See the contract referred to in the opinion.) Such contract provided that the interveners and the plaintiff (defendant in intervention) should contribute certain sums to a common fund with which to purchase the steamboat Eclipse, that the title should be taken in the names of plaintiff and another; that they should operate the boat, and pay over her earnings to the interveners, until their advances and certain claims of theirs against the boat were paid. After that the interveners' interest in the contract was to cease, and the boat to belong absolutely to plaintiff and the other purchaser. The boat was purchased by plaintiff and the other person under the agreement, and it is for the earnings while plaintiff was operating her under the agreement that the plaintiff recovered judgment. The interveners claimed the money due under this judgment as money to which they were entitled under the agreement. *Held*, that the plaintiff (defendant in intervention) cannot set up as a counterclaim a a cause of action for the conversion of his interest in the steamboat referred to in such contract; that the cause of action for the tort did not arise out of the contract or transaction set forth in the intervention complaint as the foundation of the interveners' claim, and is not connected with the subject of the action.

### Equitable Set Off—Tort.

Nor could the cause of action for tort be sustained as an equitable set off, independent of statute, there being no averment that the interveners are insolvent. The mere fact that they are not residents of the state does not warrant the application of the doctrine of equitable set off.

### Cause of Action in Tort Not Set Off Against Cause of Action Upon Contract.

Even if the interveners were insolvent, equity would not allow the set off of a cause of action for an independent tort against a claim arising on contract.

### Waiver of Tort—Recovery on Contract.

One whose property has been converted may waive the tort and sue for the benefits received by the wrongdoer, although he has not disposed of the property converted; but the intent to waive the tort must appear on the face of the pleading.

### Judgment Against Intervener.

One who intervenes in an action subjects himself as fully to the jurisdiction of the court as if he had brought an original action against the person against whom his complaint in intervention is filed, and the defendant in intervention may

recover an affirmative judgment against the intervener either because of matters growing out of the intervener's claim or by establishing a counterclaim the same as a defendant in an ordinary action.

Appeal from District Court, Burleigh County; *Winchester*, J.

Action by William Braithwaite against Akin and others. William Rea and George F. Robinson, partners as Robinson, Rea & Co., and others intervened. To the complaint in intervention, plaintiff, Braithwaite, answered, setting up counterclaims. To this answer interveners demurred. From an order overruling their demurrer, interveners appeal.

Reversed.

*Louis Hanitch, F. H. Register* and *Edgar W. Camp*, for appellants.

A single count of a complaint cannot be permitted to combine several kinds of action as one in tort, one for money demand on contract, and one in equity. *Supervisors* v. *Decker*, 30 Wis. 624; *Schuenert* v. *Koehler*, 23 Wis. 523; *Rothe* v. *Rothe*, 31 Wis. 570; *Anderson* v. *Case*, 28 Wis. 505; *Johanneson* v. *Borschenius*, 35 Wis. 136; *DeGraw* v. *Elmore*, 50 N. Y. 1; *Ross* v. *Mather*, 51 N. Y. 108; *Walter* v. *Bennett*, 16 N. Y. 250. In the present case the wrong done is the conversion of plaintiff's property, not the mere breach of an agreement to deliver property to him. *Smith* v. *Hall*, 57 N. Y. 48. The counterclaim sets out facts showing plaintiffs ownership—the conversion and the value of the boat. It is true plaintiff might have waived the tort and sued upon an implied contract. *Star Cash Car Co.* v. *Reithart*, 20 N. Y. S. 872; *Norden* v. *Jones*, 33 Wis. 600. But the allegations do not admit of such construction. The counterclaim does not set forth a violation of any contract right, but the violation of a non-contract right. *Schuenert* v. *Koehler*, 23 Wis. 523; *Smith* v. *Hall*, 67 N. Y. 48; *Edgerton* v. *Page*, 20 N. Y. 281; *Thorpe* v. *Philbin*, 3 N. Y. S. 939; *Boreal* v. *Lawton*, 90 N. Y. 293; *Woodruff* v. *Garner*, 27 Ind. 4; *Peo.* v. *Dennison*, 84 N. Y. 272. The counterclaim does not state a cause of action connected with the subject of the action. *Thorpe* v. *Philbin*, 3 N. Y. S. 939; *Burgman* v. *Burr*, 46 N.

W. Rep. 644; *Rothchild* v. *Whitman*, 30 N. E. Rep. 858; *Edgerton* v. *Page*, 20 N. Y. 281; *Woodruff* v. *Garner*, 27 Ind. 4. The subject of an action is either property (as illustrated by a real action) or a violated right. The *Glenn & Co.* v. *Hall*, 61 N. Y. 226; *Woodruff* v. *Garner*, 27 Ind. 4, 7 Abb. Pr. 372.

*Geo. W. Newton*, for respondent.

The counterclaim in question shows a breach of the contract alleged in the complaint as the basis of the claim in this action. At common law when the contract in suit laid mutual duties and obligations, the defendant was allowed to meet plaintiffs demand by a claim for breach of duty on his part. This was called recoupment and only reduced or extinguished the plaintiffs claim. Bliss Code Pl. 370; *Keyes* v. *Slate Co.*, 34 Vt. 83. "Recoupment, a *quasi* off set of counterclaims not liquidated." *Londonderry* v. *Andover*, 28 Vt. 416. It is a rule of strict justice and the deduction is allowed to prevent a circuity of actions. *Florida R. R. Co.* v. *Smith*, 21 Wall 255; *Wender* v. *Caldwell*, 14 How. 434; *Dermott* v. *Jones*, 23 How. 220; *Ingle* v. *Jones*, 2 Wall. 1. In tort by conversion of personal property, the plaintiff can waive the tort and recover for the value of the property converted as upon an implied contract to pay its value. Bliss Code Pl. 381; *Norden* v. *Jones* 33 Wis. 600; *Brady* v. *Brennan*, 25 Minn. 210; *Bank* v. *Bank*, 32 Hun. 105.

CORLISS, J. This case is no stranger in this court. In various forms it has already been before us several times. 1 N. D. 455, 475, 48 N. W. Rep. 354, 361; 2 N. D. 57, 49 N. W. Rep. 419. On this appeal we have to deal with the rights of the interveners and the plaintiff. The defendants are no longer interested in the contests of the cause. Their liability to the plaintiff and the interveners has been finally established, and now the only strife is between the interveners and the plaintiff over the judgment they have recovered. By their complaint in intervention, the interveners have ingrafted upon the original suit another controversy. In that controversy they have become plaintiffs, and the plaintiff

has become defendant. To their complaint in intervention, the plaintiff Braithwaite interposed an answer, which embodied two counterclaims. Other matters appear in the answer, but upon this appeal we have to decide only the question whether these counterclaims set forth in the answer are such counterclaims as the defendant Braithwaite had a right to interpose to the claim of the interveners. There is no contention that the first counterclaim does not contain facts sufficient to constitute a cause of action; but it is urged that this claim which the defendant Braithwaite seeks to set off against the interveners' claim to the judgment is not a legal counterclaim under the statute. The question was raised in the court below by demurrer to the answer to the complaint in intervention. From the order overruling the demurrer the interveners have appealed. The judgment in favor of the plaintiff and the interveners over which this contest is pending, was recovered in an action for freight earned by the plaintiff Braithwaite in the transportation of army stores for the defendants from Bismarck to Ft. Buford, by the steamer Eclipse. The interveners' alleged interest in the judgment grows out of a written contract, which is fully set out in the opinion of this court in the case of *Braithwaite* v. *Akin*, I N. D. 475, 48 N. W. Rep. 361. The substance of the agreement was that the interveners and the defendant Braithwaite were to contribute in cash certain sums of money with which to purchase the steamer Elipse, which was about to be disposed of at judicial sale, the interveners being interested in making this purchase because of claims held by them against the steamer, which would be cut off and rendered valueless by the sale. So far as they were concerned, their sole purpose in entering in the arrangement was to save, if possible, the money which they had theretofore ventured on the security of the boat. With the fund so created, the defendant Braithwaite was to attend at the marshal's sale, and buy the boat, taking the title in the name of himself and the intervener Joseph McC. Biggert as trustee. Under this purchase the boat was to be run by Braithwaite as captain and Biggert as financial agent; and out

of her earnings the claims of the interveners were to be paid in full, and also the sums contributed by them to the purchase fund; and thereafter the Eclipse was to be the absolute property of Braithwaite and Biggert. The interveners claim that they have not been paid in full, and that the judgment for freight earned by the steamer under this contract, or some part of the judgment, belongs to them, and they ask for an accounting. It is obvious that the interveners' cause of action against Braithwaite, set forth in the complaint in intervention, is upon contract. The counter-claim interposed is for the conversion of the steamboat Eclipse by the interveners. The defendant Braithwaite seeks to recover against these wrongdoes the value of his half interest on account of such conversion.

The right to set up a counterclaim rests upon statute, except in those cases which are peculiar in their nature. In those cases, equity, to prevent injustice, will allow counterclaims which the law ignores. Our first inquiry is whether the defendant Braithwaite has a right to set up this tort as a counterclaim under the statute? This brings us to the statute itself. It provides: "The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: *First,* A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of plaintiff's claim, or connected with the subject of the action. *Second,* In an action arising on contract, any other cause of action arising also on contract and existing at the commencement of the action." Section 4915, Comp. Laws. Under the second subdivision, any other cause of action arising on contract would constitute a good counterclaim. It is contended that the defendant Braithwaite had a right to waive the tort involved in the conversion of his interest in the steamboat, and sue in the assumpsit. The averments of the counterclaim would not bring him within the rule that a tort may be waived, as it is

laid down in many of the cases. The doctrine that the injured party may waive the tort and sue in assumpsit is limited by these decisions to cases where the wrongdoer has sold the property, and received therefor money or money's worth. *Jones* v. *Hoar*, 5 Pick. 290; *Mhoon* v. *Greenfield*, 52 Miss. 434; *Willet* v. *Willet*, 3 Watts, 277; *Stearns* v. *Dillingham*, 22 Vt. 624; *Watson* v. *Stever*, 25 Mich. 387; *Balch* v *Pattee*, 45 Me. 41; *Kidney* v. *Persons*, 41 Vt. 386; 1 Am. & Eng. Enc. Law, 888; cases in note to *Webster* v. *Drinkwater*, 17 Am. Dec. 242; *Tuttle* v. *Campbell*, 74 Mich. 652, 42 N. W. Rep. 384; *Moses* v. *Arnold*, 43 Iowa, 187. There is no allegation in the answer that the interveners ever sold the steamboat, or in any manner received money or money's worth for her. But we are of opinion that this limitation of the doctrine that the tort may be waived is without foundation in reason or principle. The whole doctrine is built upon a fiction. It asserts that what was done in defiance of the owner's rights was in law done with the most perfect regard for his rights; that the wrongdoer has received the money for the owner, or that he has bought the property from the owner at its fair value. This fiction is indulged only in the interests of the owner, and it rests upon the receipt by the wrongdoer of benefits accruing to him from his wrongful acts. Where no benefits are received, the liability is only for the wrong. As this right in the injured party to turn the tort liability into a contract liability stands upon the receipt of benefits by the wrongdoer, is it not beneath the dignity of any tribunal to draw a distinction between the receipt of benefits in the shape of cash and the receipts of benefits in the form of property? In our judgment, the fact that a sale has not been made is unimportant. Not only upon sound principle, but also upon the foundation of strong authority, do we establish the rule in this state that the owner of property converted may waive the tort and sue in assumpsit for the benefits received whenever the tort feasor receives benefits of any kind from the wrong committed, whether by sale or by retention of the converted property, or in any other manner. *Norden* v. *Jones*, 33 Wis. 600-604; *Hill* v. *Davis*, 3 N. H. 384; *Stockett* v.

*Watkins,* 2 Gill & J. 326-342; *Barker* v. *Cory,* 15 Ohio, 9; *Berley* v. *Taylor,* 5 Hill, (N. Y.) 583; *Terry* v. *Munger,* 121 N. Y. 161, 24 N. E. Rep. 272; *Fratt* v. *Clark,* 12 Cal. 89. See note to *Webster* v. *Drinkwater,* 17 Am. Dec. 244. That the claim of defendant Braithwaite to recover in assumpsit the value of his interest in the boat would have been a good counterclaim had he waived the tort and sued in assumpsit cannot be doubted. When the tort is waived, the claim rests in contract, as well for the purpose of making it a cause of action arising on contract within the statute regulating counterclaims as for other purposes. In fact, the sole object in waiving the tort is often for the purpose of enabling the injured party to set up his claim as an offset, when, without such waiver, he could not, because of its tort nature, use it as a counterclaim. *Norden* v. *Jones,* 33 Wis. 600; *Coit* v. *Stewart,* 50 N. Y. 17; *Brady* v. *Brennan,* 25 Minn. 210; *Car Co.* v. *Reinhardt,* (Com. Pl. N. Y.) 20 N. Y. Supp. 872; *Wood* v. *Mayor,* 73 N. Y. 556; *Barnes* v. *McMullins,* 78 Mo. 260; *Becker* v. *Northway,* 44 Minn. 61, 46 N. W. Rep. 210; *Evans* v. *Miller,* 58 Miss, 120; Pom. Rem. & Rem. Rights, § 801.

It remains to be considered whether the defendant Braithwaite has elected to waive the tort and sue in assumpsit. The portion of the answer material to this inquiry contains the following averment: "That, notwithstanding the interveners forcibly and wrongfully seized and took possession of said boat, her tackle, apparel, furniture, machinery, papers, books, stores, and merchandise, and forcibly and wrongfully dispossessed the plaintiff of the same, and there and then wrongfully converted the same to their own use at Bismarck, aforesaid." There are other allegations in the counterclaim, but none of them throw any light upon the subject of the election of the defendant Braithwaite to waive the tort; nor are there any allegations of a sale of the property by the defendant Braithwaite, or that other interveners undertook or promised to pay for Braithwaite's interest in the boat the value thereof or any sum whatever. The other averments of the counterclaim, so far as these matters are concerned, might as well have

been omitted from the answer. They are mere surplusage. The substance of them is that, while Braithwaite was performing his part of the contract, the interveners seized the boat wrongfully. It was just as much a conversion for them to seize under these circumstances as it would have been had there been no agreement between the parties. The act was as much a tort as though a stranger to the contract had seized the boat. There being no averment of an election to waive the tort, and there being nothing in the pleading to warrant a recovery in assumpsit,—the allegations being those which are peculiarly adopted to the averment of a cause of action for conversion,—we cannot treat the counterclaim as setting up a cause of action arising on contract. That the pleading should clearly show that the party elected to stand upon contract, and not upon the tort, is apparent when we consider the consequences which flow from a judgment for a wrong. Execution may issue against the person. Sections 4945, 5115, Comp. Laws. If allowed, through error of the court, to use the tort as a counterclaim, on the ground that no waiver was necessary, could he not, after a judgment in his favor, proceed against the person of the debtor under the judgment? Nor would it do to answer that, by using the tort as a counterclaim, he had manifested his election to stand upon contract, for there are many cases in which a tort may be used as a counterclaim under the statute. In such cases the interposition of a cause of action for a wrong as a counterclaim would not indicate a purpose to waive the tort. The right to a body execution would therefore involve an inquiry whether the cause of action for the wrong could have been set up as a wrong against the plaintiff's cause of action. This right would never depend upon the construction of the pleading alone when judgment had been recovered by a defendant upon a counterclaim, while it would depend entirely upon such construction whenever judgment should be recovered by a plaintiff in an action founded on a similar cause of action. In the latter case the court would look only to the complaint to see whether the tort had been waived.

To allow the defendant to insist upon a constructive waiver would violate the fundamental law of pleading. The answer must set up the facts constituting the counterclaim. But facts which show a cause of action for a wrong do not make out a case in assumpsit, and, unless the case is in assumpsit, there is no legal counterclaim. To establish a cause of action in assumpsit, the waiver must be averred either expressly or by the manner of stating the cause of action, for without the waiver no cause of action in assumpsit arises. It is not the wrong which gives the injured party the right to sue on contract; it is the wrong, coupled with the waiver of the tort. The waiver is an indispensable element in the cause of action. That the counterclaim was for conversion does not admit of doubt. See *Smith* v. *Frost*, 70 N. Y. 71; *Smith* v. *Hall*, 67 N. Y. 48; *Anderson* v. *Case*, 28 Wis. 505. The case of *Austin* v. *Rawdon*, 44 N. Y. 63, has been cited to sustain the defendant's contention that he has set up a cause of action arising on contract. Other cases might be added to this to support the doctrine which it enunciates. We cite a few: *Conaughty* v. *Nichols*, 42 N. Y. 83; *Tugman* v. *Steamship Co.*, 76 N. Y. 211; *Neftel* v. *Lightstone*, 77 N. Y. 99; *Goodwin* v. *Griffis*, 88 N. Y. 629; *Becker* v. *Northway*, 44 Minn. 61, 46 N. W. Rep. 210. But these cases decide nothing contrary to the conclusion we have reached. They merely hold that, where the pleading contains a good cause of action for breach of contract, the addition of works or of allegations which are appropriate to a cause of action for a wrong does not change the action from tort to contract. They were cases where the pleader had a cause of action for breach of contract without any waiver of tort; but the same act which gave him such cause of action constituted also an actionable wrong. It was therefore necessary for him to elect which remedy he should adopt, but it was not necessary for him to waive a tort before he could sue on contract. He was held in these cases to have made his election not to proceed for the tort, and the mere presence in the pleading of words germane to an action for a wrong was properly held not to overthrow the main purpose of the pleader to sue on contract. In case of doubt

the courts incline against construing the pleading as embodying a cause of action for a tort. *Goodwin* v. *Griffis*, 88 N. Y. 629, 639, 640. And, under such circumstances, authority and reason support the rule that where the answer is susceptible of either construction, the defendant, by using his cause of action as a counterclaim in a case where it would be a valid counterclaim only on the basis of an election to counterclaim for breach of contract, evinces his election to hold the plaintiff responsible for the violation of his contract, and not for the tort. *Becker* v. *Northway*, 44 Minn. 61, 46 N. W. Rep. 210. Whether defendant can now waive the tort by amending his answer is not before us for decision, but there seems to be strong authority against his retracing his steps in pleading under such circumstances. The cases appear to hold that the election is irrevocably made when the pleading is served, provided the pleader has full knowledge of the facts. We do not, however, wish to foreclose this point before it arises, and therefore refrain from expressing any opinion on it. We merely cite the decisions which hold that the election, when once made, is final. *Terry* v. *Munger*, 121 N. Y. 161, 24 N. E. Rep. 272, and cases in note to *Fowler* v. *Bank*, [21 N. E. Rep. 172,] 10 Am. St. Rep., at pages 487 to 494.

Having reached the conclusion that the counterclaim was not proper under subd. 2 of § 4915, we will now inquire whether it comes within the provisions of the first subdivision. Does the counterclaim arise out of the contract or transaction set forth in the interveners' complaint as the foundation of their claim to this freight money? The contract which is the foundation of this claim is the written agreement already referred to. The wrongful seizure of the boat does not arise out of that contract. The seizure was independent of that agreement. It had no more connection with the contract than a seizure by a third person would have had. Is it in any manner connected with the subject of the action? The words "subject of the action" are of rather indefinite significance. In our judgment the subject of the interveners' intervention is their right to the earnings of the boat under this

agreement until they are fully paid.   The only possible theory on which it can be said that the cause of action for the conversion of the boat is connected with the interveners' right to the boat's earnings is that there was an implied engagement on the part of the intervencrs not to interfere with defendant's right of possession while he was managing the boat under the contract.   But we do not think that any such implied agreement can be said to have existed, imposing any different obligation upon the interveners than rested upon every other person, *i. e.* the obligation under the law not to disturb the defendant in the control of his own prop-. erty.   Even one who sells property to another cannot be said to havc agreed, as part of the contract of sale, that he will not disturb the vendee in his possession.   When the vendor has performed his part of the agreement, the contract is executed so far as hc is concerned, and cannot thereafter be broken by him.   If he subsequently seizes the property, and converts it to his own use, hc is not liable for breach of his contract of sale or any of the terms thereof, but merely as a wrongdoer, independently of any agreement,—liable in the same manner as a stranger to the agreement would have been, and in no other way.   We hold that the cause of action for the conversion of the boat had no connection, however slight, with the interveners' right to the boat's earnings; and no mere partial or remote connection will suffice to bring the case within the statute.   The connection must be immediate and direct.   Pom. Rem. & Rem. Rights, § 776.   Without attempting to lay down a general rule by which future cases are to be governed, we refer to the following decisions as sustaining our views on this point:   *Bazemore* v. *Bridges*, (N. C.) 10 S. E. Rep. 888; *Humbert* v. *Brisbane*, 25 S. C. 506; *Manufacturing Co.* v. *Hall*, 61 N. Y. 226; *Woodruff* v. *Garner*, 27 Ind. 4; *Thorpe* v. *Philbin*, (Com. Pl. N. Y.) 3 N. Y. Supp. 939; *Edgerton* v. *Page*, 20 N. Y. 281; *Rothschild* v. *Whitman*, (N. Y. App.) 30 N. E. Rep. 858; *Brugmann* v. *Burr*, (Neb.) 46 N. W. Rep. 644; *Ward* v. *Blackwood*, (Ark.) 3 S. W. Rep. 624; *MacDougall* v. *Maguire*, 35 Cal. 274.

Can the counterclaim be sustained as a set off in equity?   We

think it cannot, for two reasons. In the first place there is no fact averred in the answer calling for the application of the liberal doctrine of equity jurisprudence on this subject. There is no allegation that the interveners are insolvent. It is true that they are nonresidents, but the mere inconvenience of being compelled to resort to a foreign jurisdiction is not sufficient to call into operation those equitable rules which grafted upon the common law the civil law doctrine of compensation in a modified form. *Smith* v. *Gaslight Co.*, 31 Md. 12; *Murray* v. *Toland*, 3 Johns. Ch. 569; *Tone* v. *Brace*, 8 Paige, 600. See, also, *Stonemetz Printers' Machinery Co.* v. *Brown Folding Mach. Co.*, 46 Fed. Rep. 854. Equity follows the law as to set offs unless insolvency or or some other fact calls for the application of a more liberal rule to prevent injustice. This rule is elementary. *Duncan* v. *Lyon*, 3 Johns. Ch. 351; 2 Story, Eq. Jur. § 1434; *Abbott* v. *Foote*, 146 Mass. 333, 15 N. E. Rep. 773. Mere nonresidence of the parties is not such a fact. But, even if we should hold that a special equity in favor of the defendant was created by the fact that the interveners resided in another state, our conclusion would not be different. The doctrine of set off, as applied in equity, relates only to claims arising on contract. Equity has never set off a cause of action for tort against a debt. The doctrine was borrowed from the civil law doctrine of compensation. *Duncan* v. *Lyon*, 3 Johns. Ch. 359; 2 Story, Eq. Jur. § 1440. No mention of setting off a claim for damages because of a wrong against a defendant can be found in the civil law. "Under Justinian the debts were held to operate as mutually extinguishing each other *ipso jure*. When the parties came before the judix, he ascertained their respective claims on each other, and, if there was on the whole a balance in favor of the plaintiff, awarded the amount to him. All the old distinctions were done away, and it no longer made any difference whether the two debts arose from the same transaction, or whether things of the same kind were payable. [The words *'ex eadem causa'* in text are therefore, under Justinian's legislation, inaccurate.] But Justinian made it requisite that the

defendant's claim should be clearly well founded, and that the amount should be at once ascertainable, and not need further inquiry to determine it, and he would not allow any set off to an *actio deposite.*" Sandar's Just, p. 541. Here is no mention of tort. The doctrine related exclusively to debts, and the amount of these debts must have been fixed or capable of ascertainment by computation. It has never been pretended that the English chancellors went beyond the civil law in relation to set off. Judge Story deprecates their refusal to go as far. He says: "The general equity and reasonableness of the principles upon which the Roman superstructure is founded make it a matter of regret that they have not been transferred to their full extent into our system of equity jurisprudence." 2 Story, Eq. Jur. § 1444. The absence of any decision sustaining the power of equity to set off a tort claim against a debt is very persuasive that no such power existed, but the question is rescued from all doubts by the cases. "Set off in equity is allowed upon the same general principles as at law. There must be mutuality in the demands, and the amounts should be liquidated and certain; and, while the practice in equity may be more liberal than at law in respect to mutual credits, set off can no more be allowed in equity than at law in cases of demands for uncertain damages as on breaches of covenant or for torts." See, also, *Duncan* v. *Lyon*, 3 Johns. Ch. 359; *Dugan* v. *Cureton*, 1 Ark. 31; *Chambers* v. *Wright*, 52 Ala. 444; *Price* v. *Lewis*, 17 Pa. St. 51. Neither can it be said that, irrespective of the rules regulating set offs and counterclaims, the court, in adjusting the rights of the parties to this fund, can take into consideration this independent tort. If it was a tort connected with the matter as to which the accounting is to be had, there would be force in the the contention. In an action to redeem from a mortgage, the mortgagee in possession may be compelled to account for injury done to the freehold; and in such a proceeding all matters will be inquired into which go to determine the rights of the parties with respect to the mortgage debt and the land. But in such an action an independent tort would not be considered. The conversion

of this boat was in no manner connected with the agreement between the parties, or their rights and duties thereunder, or the claim of the interveners for the earnings of the boat. So far as such connection is concerned, the case would have been the same if they had seized other property belonging to the defendant. By the seizure of the Eclipse they violated no provision of their agreement. They invaded the defendant's rights as owner. But those rights were not secured to him by the contract. He obtained them by virtue of his purchase of the boat at the marshal's sale. The agreement gave him no title to the boat. By it the interveners did not agree to defend him in that title; nor did they promise not to molest him in his ownership. They merely agreed to furnish him certain money to enable him to buy the vessel, and thereafter he was to run the boat in their interests until their advances and their old claims against the boat were fully paid. Whatever rights he enjoyed as owner the parties left to the protection of the same law which protects all persons in the ownership of property. The act of the interveners in converting the boat had a twofold effect,—it affected the defendant Braithwaite's rights as owner, and it affected his interests under the contract. So far as it invaded his rights as owner, the act had no connection with the rights of the parties under the contract.

What rights of the defendant under the agreement did it interfere with? This brings us to the second counterclaim. It is for the loss of a year's wages which it is claimed defendant would have earned had he run the boat as captain under the agreement. But the interveners nowhere in the writing agree to pay the defendant any stipulated wages. He is merely to receive $150 out of the earnings of the boat. It cannot be said that the parties intended, if defendant ran the boat at a loss, that they should nevertheless pay this salary out of their own means. Nor is there any time specified during which defendant is to receive this salary. If he can recover a year's pay, why not two years' pay as well? This claim is founded in a mistaken construction of the agreement. The interveners did not hire defendant to run his

own boat for any specified period. They were providing for the payment of their claims, and, as defendant must have some income on which to live, they allowed him to pay $150 per month less out of the boat's earnings on their claims than he would have paid had no such provision been inserted in the agreement. But in the end they were to receive only so much money, and the defendant was, by turning over these earnings, only paying for his interest in the boat. The interveners might at any moment have waived the performance by defendant of the obligation to pay them the boat's earnings, and no one would dream that they would have been bound to keep on paying his monthly salary; or they might have prevented such performance without being liable for his salary in the future. The mere fact that their act preventing performance rendered them liable for the conversion of the boat did not increase their liability under the contract. There is no other possible interest of the defendant under the contract which could be effected by the seizure of the boat. The interveners had fully performed their part of the agreement. As to them the contract was executed. They could not violate an engagement they had already performed. Whatever remained to be done under the agreement was to be done by the defendant. Exonerating him from the performance of those executory conditions would be a benefit, and not a detriment. We are therefore of opinion that the demurrer to the two counterclaims should have been sustained, and the order overruling the demurrer is therefore reversed.

There is another question which was not discusssed, but which may arise on the trial of the issues between the interveners and the defendant. We wish to settle it now to the end that no further appeal need to be taken to settle it in the future. Including this appeal, there have been four appeals in the case. This would seem to be sufficient for one litigation. The question to which we refer is whether there can be an affirmative judgment in favor of defendant Braithwaite in case the evidence should disclose the fact that not only were the interveners not entitled to

any of the proceeds of the judgment, but that they were indebted to the defendant because of any matters growing out of the transaction. The theory of an intervention is that the interveners become plaintiffs to the extent of their intervention against the parties to the original action against whom their claim is made. It is an action within an action. We are clear that, when these interveners sought to recover this freight money as against Braithwaite, they opened for final determination all matters which could have been litigated between the parties had they brought an action to compel him to account for and pay over the money after he had collected it. The code seems to settle this point. In case of intervention the parties to the action against whom the interveners make their claim are allowed to answer or demur to the complaint as if it were an original complaint. Comp. Laws, § 4886. He may therefore not only go into the case fully in his answer, but he may do what any other defendant may do, i. e. set up a counterclaim, and recover an affirmative judgment. The hardship, if not the injustice, of any other rule, is apparent. Were defendant not allowed to have judgment against the interveners, then he might be compelled to litigate the same question against them twice to secure relief. It is only by an examination into all matters between these parties that it can be determined whether the interveners are entitled to the proceeds of the judgment or of any portion thereof. Such an investigation might disclose the fact that they had been overpaid through mistake or fraud. Must the defendant, after showing that they were indebted to him in a certain sum, see the interveners dismissed by the court from the jurisdiction without his obtaining any redress from the court, and be forced to sue them, and travel over the same weary, tedious, and expensive route to secure relief? It would be a reproach to the administration of justice to so sacrifice substance to form, without a single reason to justify or excuse the sacrifice. When persons intervene in an action, they assume the position of plaintiffs against those who are called up to answer their complaint in intervention, and they are subject to all the rules which regulate

pleading and practice between plaintiffs and defendants in similar cases. So the statute, in effect, declares. The rule is practicable and just; and it is supported by authority. *Bank* v. *Weems*, 69 Tex. 489, 6 S. W. Rep. 802. This was an action brought by stock-holders of the City Bank of Houston to have it dissolved, and for the appointment of a receiver, and the distribution of its assets among its creditors and stockholders. The Continental National Bank of New York intervened in the action as creditor of the City Bank of Houston, claiming priority of payment. The receiver set up a claim of the City Bank against the Continental National Bank for paper sent by the former bank to the latter bank for discount, which the latter bank had refused to discount, but which it was collecting, appropriating the money to its own use. Judgment was rendered against the intervener bank, in favor of the receiver, upon this counterclaim, and on appeal this affirmative judgment was sustained, the court saying: "We are of opinion that, although this proceeding was an intervention in another suit, and was a mere outgrowth of the original action, yet, appellant (the intervener) having sought the jurisdiction of the court to establish equities against the estate in the hands of the receiver, it was proper to allow the latter to reconvene and set up all the rights of the insolvent corporation growing out of a continued course of dealing under one general agreement. It was not error for the court to adjust the equities between the two banks, and to state the amount, and give judgment for a balance found in favor of the insolvent bank."

The order overruling the demurrer is reversed. All concur.

(56 N. W. Rep. 133.)

NOTE: See for other features of this ligation. *Rae* v. *Eclipse*, 30 N. W. Rep. 159. The Steamer Eclipse, 135 U. S. 590, S. C. 10 S. C. Rep. 873.