74 652
128 138
128 245

74 652
s42NW 384
s16ASR652ll
131 ²627

74 652
137 ¹ 41'

74 652
147 ¹642

74 652
153 ¹ 83

## FLORA B. TUTTLE v. JOHN F. CAMPBELL AND MARTIN HANLON.

*Action—Assumpsit—Trover—Sale—Tenancy in common.*

1. In this case defendants purchased a stock of goods of plaintiff's husband, who was in exclusive possession, but who was a tenant in common with her, she having purchased from him an interest in the goods designated as $1,000 worth of the entire stock, of which fact the defendant Campbell is found by the jury to have had notice, and on a demand being made by her of defendant Hanlon for her interest he refused to recognize that she had any interest in the goods, whereupon she brought an action of *assumpsit*, waiving the tort, to recover such interest, and a judgment in her favor is reversed, on the grounds that the property had not been sold and converted into money, and that the case does not fall within that class where the tort may be waived and *assumpsit* maintained in case of a conversion without a sale, for the reason that the relation of the parties, out of which the duty violated grew, had its inception in contract.

2. The following general propositions are summarized from the opinion of Mr. Justice CHAMPLIN:

   *a*—The owner of chattels may sell an undivided interest in them, which may be measured at so many dollars' worth as well as by any specified fraction of the whole, and the relation thus created will be a common ownership, which, by analogy to such relations in real property, is frequently designated as tenancy in common.

   *b*—In such a case no actual delivery is required, and the title passes at the time of the sale, if such is the intent of the

parties, either or both of whom may have *actual* possession of the property, and when one has *exclusive* possession he is the bailee of his co-owner's share.

*c*—A sale of an interest in personal property must be supported by a sufficient consideration.

*d*—One tenant in common of a stock of goods cannot convey away the title to the entire stock, without the consent of his cotenant, which will be implied as to goods retailed out to customers in the ordinary course of business, without objection from and with the knowledge of the cotenant.

*e*—The principle is well settled that a seller of personal property can convey no greater title than he has, and it makes no difference that the purchaser has no notice and is ignorant of the existence of other parties in interest, provided they are not estopped from asserting title by their conduct or laches.

*f*—Ordinarily, when an owner in common sells the goods, his co-owner may treat such sale as a conversion, and bring trover to recover the value of his share against such vendor; but he is not obliged to do so, but may retain his title in the goods in the hands of the purchaser, and if he converts them he is likewise liable to *his* (such) co-owner.

*g*—A total destruction of the chattel, or a conversion of the whole to his own use, or something equivalent, such as a total denial of his co-owner's interest in the property, coupled with total expulsion from possession, will render the owner in possession liable to his co-owner.

*h*—Owing to the right which an owner in common has to the possession of the property so owned, if in its nature indivisible, his mere refusal to yield possession or admit to a joint possession, without denying the interest or ownership of his co-owner, will not constitute a conversion.

*i*—One who buys property must, at his peril, ascertain the ownership; and, if he buys of one having no authority to sell, his taking possession in denial of the owner's right is a conversion. Cooley, Torts, 528 (*451).

*j*—The general rule is that before a party can waive a tort for the conversion of personal property and bring *assumpsit* the property in the hands of the *tort-feasor* must have been sold and converted into money, upon the theory that the money has been received for the plaintiff's use.

*k*—There is, however, another class of cases, where the property has been converted but not sold, where the tort may be waived and *assumpsit* brought for the value of the goods converted. This class belongs to those relations where a contract may exist and at the same time a duty is superimposed or arises out of the circumstances surrounding or attending the

transaction, the violation of which duty would constitute a tort. In such cases the tort may be waived and *assumpsit* maintained, for the reason that the relation of the parties, out of which the duty violated grew, had its inception in contract.

*l*—When an owner in common of personalty has the exclusive possession he is the bailee of his co-owner's share. In such case there is a contract of bailment between the parties, the law implying a delivery from the nature of the case and the peculiar rights which one owner in common has to such property when reduced to his possession. He takes it and holds it upon the trust and confidence that he will care for it and use it, if he uses it, in an ordinarily careful manner, and will not sell or convert his co-owner's share to his own use. If he violates this trust and confidence by converting the property to his own use, his co-owner may bring trover for the conversion, or, waiving the tort, may sue in *assumpsit* to recover its value. *Fiquet v. Allison*, 12 Mich. 328.

Error to Ingham. (Peck, J.) Argued February 12 and 13, 1889. Decided April 24, 1889.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Smith & York*, for defendants.

*R. A. Montgomery*, for plaintiff.

[The points of counsel and authorities cited are stated in the opinion.—REPORTER.]

CHAMPLIN, J. Some time in 1882 William A. Tuttle, who is the plaintiff's husband, engaged in the business of selling drugs and medicines at Williamston, Ingham county. He occupied a store which belonged to his wife, Flora B. Tuttle.

In March of 1884 domestic dissensions caused a separation between Tuttle and his wife, and she left him and determined upon filing a bill of complaint to obtain a divorce from the bonds of matrimony. To save litigation over the question of alimony, he agreed to give her

$1,000, in full of all claims against him, to be paid when she obtained a decree for divorce, to secure which he gave her a certificate of deposit on the bank of Daniel L. Crossman, payable to her order when she should obtain a decree for divorce against her husband. The certificate was then left with Crossman for safe keeping. This arrangement was so entirely satisfactory that the parties, on the same day or the next, laid aside their differences and went to living together again. The bill was not filed, neither was the certificate of deposit taken up or canceled with her consent. Harmony, however, did not long prevail in the Tuttle family. Dissensions broke out anew, and Mr. Tuttle, without her knowledge, obtained from Mr. Crossman possession of the certificate, and a short time thereafter she found it in his cash-drawer and took and retained possession of it. It appears that the date of the certificate was March 22, 1884, and when it was obtained Mr. Tuttle deposited $500, and gave his note to Crossman, due in six months, for the other $500. This note was not taken up when he became possessed of the certificate after the reconciliation, and there is no direct testimony that he then withdrew the $500 cash which he had deposited, although there is a strong inference to that effect from Crossman's testimony. At any rate, in August Mrs. Tuttle held the $1,000 certificate, and Crossman held Mr. Tuttle's note for $500. At this time Mr. Tuttle told her that he had got to sell in order to pay Crossman that $1,000, because he had to secure him at the time he got the certificate, and that she might come on Crossman if he did not settle, and so he had got to sell out to pay him. He finally told Mrs. Tuttle that if she would indorse the certificate of deposit to him she could have a thousand dollars' worth of interest in the stock of drugs and medicines, which offer she accepted, and indorsed the certificate, and Tuttle delivered

it up to Crossman on August 19, 1884, and Crossman canceled it, and delivered up to Tuttle his note of $500. There was some testimony tending to prove that Tuttle had occupied the store of Mrs. Tuttle over two years without paying any rent to her, and also had collected the rents of tenants occupying other portions of the building, for which he owed her, and that this indebtedness also entered into the consideration for the $1,000 worth of interest in the stock of goods.

After this transaction Mr. Tuttle continued to carry on the business until April 25, 1885, when he sold the entire stock of goods and fixtures to defendants for $2,750, $500 of which was paid in cash, and the balance in notes. The last one to mature, being for $250, was made conditional upon defendants being able to obtain a lease of the store from Mrs. Tuttle. An inventory made soon after the purchase at the cost price showed the value of the stock to have been a little over $3,160. The bargain was closed on Saturday night, and the next day Mr. Tuttle left the place and remained absent nearly two years without his whereabouts being known to Mrs. Tuttle. The sale was made without her consent. She had heard that the defendant Campbell was endeavoring to purchase, and he had inquired of her whether she would rent to him the store in case he should purchase, and she refused, and also, as she testifies, expressly notified him in that interview that she was the owner of a thousand dollars' interest in the stock of goods. This interview was about four months before the purchase by defendants. The defendant Hanlon had been a school-teacher in the village, and had heard that the domestic relations of Tuttle and his wife were not entirely harmonious. He was invited by Dr. Campbell to join him in making the purchase, and had been told by him that Mrs. Tuttle refused to rent the store to him, but it was not shown that he

had express notice of Mrs. Tuttle's $1,000 interest in the stock of goods when he purchased. A bill of sale was executed to them jointly by Tuttle, conveying the whole stock of goods then in the store. They thereupon went into possession, and continued the sale of drugs at retail, Mr. Hanlon giving his attention to the selling of the goods in the store. About 30 days after the purchase Mrs. Tuttle went into the store and found Mr. Hanlon there in possession, and stated to him that she had a thousand dollars' interest in the stock, and demanded that he turn out to her a thousand dollars' worth of the goods in the stock, or pay her $1,000 for such interest. He absolutely refused to do either, and claimed that they had bought the whole stock and it was theirs. No demand was made upon defendant Campbell. This suit was then brought by plaintiff, alleging the conversion of her interest in the goods, but waiving the tort, and asking a judgment for their value in *assumpsit*. The trial resulted in a verdict and judgment for the plaintiff for the full amount of her claim, with interest from the date of demand.

Three objections were taken to the admission of testimony. We do not think the errors assigned upon them call for a reversal of the judgment upon any of the grounds stated against the admission of such testimony.

The main grounds of error relied on may be considered under the following heads:

1. Was the transaction between the plaintiff and her husband such a one as created them owners in common of the stock of goods?

2. If they were such owners in common, would a purchaser from the husband of the whole stock, without notice of his co-owner's rights, acquire a title to the whole stock?

3. If not, is the purchase by Dr. Campbell, with notice of plaintiff's ownership, and the refusal to recognize the

rights of Mrs. Tuttle by the defendant Hanlon, evidence of a conversion of the goods by both defendants, so as to sustain an action against both jointly ?

4. Where a small portion only of the goods are sold, the balance remaining in possession of the co-owners in common, who deny the right of another owner in common to any of the goods, can the dispossessed owner treat it as a conversion of the whole, and, waiving the tort, maintain an action of *assumpsit* to recover the value of the goods converted ?

1. The owner of chattels may sell an undivided share or interest in them, and the relation thus created will be a common ownership, which, by analogy to such relations in real property, is frequently designated as tenancy in common of the property. In such case no actual delivery is required. The title passes at time of sale, if such is the intent of the parties. Both or either may have the actual possession of property owned in common, and when one owner has the actual possession, and the other has not, the owner in possession is simply the bailee of his co-owner's share.

When an undivided share or interest in personal property is sold, there is no more objection to a designation of the interest sold by dollars' worth than there is by designating a part as one-half, one-fifth, or any other fraction of the whole. In either case the part sold is a fraction of the whole, and extends to every part and parcel thereof. In one case the unit is the property; in the other, the unit is the value of the property. But the value represents the property, so that the units are in fact the same. The share conveyed measured by dollars' worth will depend, as regards quantity, upon the total value or worth of the whole property. And, in cases where the property is severable and capable of division in kind without sale, such share may be severed or separated from the rest by taking so many dollars' worth, without

regard to the quantity that is left, whether it be much or little, for the balance of the unit will be left after taking out the dollars' worth severed.   Of course, a division is more readily made when the unit is the thing and the share is designated by a fraction of the quantity; but if the owners cannot agree upon the division, then the remedy is a sale, as in other cases.   Dollars' worth is often used to measure and designate the share or ownership in property.   More particularly is this the case in partnership transactions.   No difficulty has been experienced in dividing up the property from the use of such standard as a measurement of interest.   A sale of an interest in personal property must be supported by a sufficient consideration.   In this case there was evidence of a present consideration passing from Mrs. Tuttle to her husband, which, if believed by the jury, was sufficient to support the contract.   We conclude that the transaction between Mr. and Mrs. Tuttle was such as created them owners in common of the stock of goods.

2. This being so, he could not without her consent convey away her title to the goods to the defendant purchasers.   So far as he retailed goods out of the store to customers, her consent would be implied by the course of dealing tacitly permitted by her, without objection.   But a sale of the entire stock, being out of the ordinary course of business, would require her consent, in order to bind her or carry her interest to the purchaser.   She testified that he had expressly agreed that he would not sell out the entire stock without her knowledge and consent, and that this sale was made in violation of that agreement.   Owners in common of property have a right to dispose of their own undivided share, but such owner cannot sell the whole property, nor any portion thereof except his own; and if he undertakes to dispose of any larger interest his co-owners are not bound thereby.   *Rus-*

*sell v. Allen*, 13 N. Y. 173, 178, per Dean, J.; *White v. Brooks*, 43 N. H. 402; *Welch v. Sackett*, 12 Wis. 243; *Frans v. Young*, 24 Iowa, 375. The principle is well settled that a seller of personal property can convey no greater title than he has, and it makes no difference that the purchaser has no notice and is ignorant of the existence of other parties in interest. *Couse v. Tregent*, 11 Mich. 65; *Dunlap v. Gleason*, 16 Id. 158; *Trudo v. Anderson*, 10 Id. 357; *Parish v. Morey*, 40 Id. 417; *Pease v. Smith*, 61 N. Y. 477; *Bearce v. Bowker*, 115 Mass. 129. Exceptions are found where, through the conduct of the party or by his laches, he is estopped from asserting title as against the innocent purchaser; but this case does not come within the exception. The fact that Hanlon had no notice of plaintiff's interest in the goods before he purchased from Mr. Tuttle is of no importance, and the rule laid down by the court, requiring that they should find as matter of fact that he had notice of her interest in order to entitle her to recover, was more favorable to defendants than they were entitled to, and the question raised by defendants' counsel, that there was no testimony to support such finding, is of no consequence. By their purchase the defendants acquired title to that portion of the stock which their vendor had not sold to Mrs. Tuttle, and to that only, and they stood in the same relation to Mrs. Tuttle, respecting the ownership of the goods, as their vendor stood before their purchase, and were owners in common with her of the entire stock.

3. Ordinarily, when an owner in common sells the goods, the other owner in common may treat this act as a conversion, and bring an action of trover against his co-owner, to recover the value of his share; but he is not obliged to do this. He may retain his title in the goods in the hands of the purchaser, and if he converts them he is likewise liable therefor as his co-owner. What constitutes

a conversion, short of a sale, is not definitely settled. A total destruction of the chattel, or a conversion of the whole to his own use, or something equivalent, such as a total denial of his co-owner's interest in the property, coupled with a total exclusion from possession, will render the owner in possession liable to his co-owner. Owing to the right which an owner in common has to the possession of property so owned, if the property is in its nature indivisible, mere refusal to yield possession of the property or admit to a joint possession, without denying the interest or ownership of his co-owner, will not constitute a conversion. I have no doubt that the claim set up of such exclusive ownership by Hanlon when demand was made upon him, and his denial of, and his refusal to recognize, the rights of plaintiff, constituted a conversion of the plaintiff's interest in the property, so far as he was concerned. No demand was made of defendant Campbell, and none was necessary, if the testimony of Mrs. Tuttle is to be believed, and under the instructions of the court the jury have given credence to it. The law is laid down in Cooley, Torts, at page 528 (*451), that:

"One who buys property must, at his peril, ascertain the ownership; and, if he buys of one having no authority to sell, his taking possession in denial of the owner's right is a conversion."

Dr. Campbell purchased knowing Mrs. Tuttle's right to the property, and in contravention of it purchased from Tuttle the whole property, without recognizing, but ignoring, her rights or title to any of it, and took possession thereof under his bill of sale conveying the whole property with warranty. This was a conversion of her share in the property by him, and a demand before bringing suit was unnecessary. The third question must be answered in the affirmative.

4. The general rule is that before a party can waive a tort for the conversion of personal property and bring *assumpsit* the property in the hands of the tort-feasor must have been sold and converted into money, upon the theory that the money has been received for the plaintiff's use. There is, however, another class of cases, where the property has been converted but not sold, where the tort may be waived and *assumpsit* brought for the value of the goods converted. This class belongs to those relations where a contract may exist and at the same time a duty is superimposed or arises out of the circumstances surrounding or attending the transaction, the violation of which duty would constitute a tort. In such cases the tort may be waived and *assumpsit* be maintained, for the reason that the relation of the parties, out of which the duty violated grew, had its inception in contract. These relations are usually those of trust and confidence, such as those of agent and principal, attorney and client, or bailee and bailor. When an owner in common of personalty has the exclusive possession of the property he is a bailee of his co-owner's share. In such case there is a contract of bailment implied between the parties, the law implying a delivery from the nature of the case and the peculiar rights which one owner in common has to such property when reduced to his possession. He takes it and holds it upon the trust and confidence that he will care for it and use it, if he uses it, in an ordinarily careful manner, and will not sell or convert his co-owner's share to his own use. If he violates this trust and confidence by converting the property to his own use, his co-owner may bring trover for the conversion, or, waiving the tort, may sue in *assumpsit* to recover its value. This has been the settled law in this State for many years, and was explicitly declared in *Fiquet v. Allison*, 12 Mich. 328, which case is decisive of this. See, also, *Coe v.*

*Wager,* 42 Mich. 49 (3 N. W. Rep. 248); *McLaughlin v. Salley,* 46 Id. 219 (9 N. W. Rep. 256); *Evans v. Miller,* 58 Miss. 120.    The facts of this case do not bring it within the principle above stated, and the action of *assumpsit* cannot be maintained.

The judgment must be reversed and a new trial granted.

MORSE and LONG, JJ., concurred with CHAMPLIN, J.

CAMPBELL, J.   I do not think any cause of action was shown, and I concur in the result for that reason.

SHERWOOD, C. J., *(dissenting).*   I cannot concur in the result reached by my brethren in this case.   I think the judgment should be affirmed.   There can be no doubt, it seems to me from a perusal of the testimony, but that the defendants had full knowledge of the situation of all the parties, and the true relation each sustained to the property, and, while it is a little difficult to classify the interest of the plaintiff, its true character is apparent, and it is clearly manifest that justice and equity require that the judgment should be affirmed.   Otherwise the evident intention of the husband of plaintiff, by the aid of the defendants, to cheat the plaintiff out of her debt will be accomplished, and this should not be permitted. It will not help the plaintiff's case to say, "we will allow you to take a better writ if we do send you out of court," for the costs and expenses of the litigation will soon exhaust her claim, even if she is successful.   But why should she now not have her money in the suit she has brought?   The conversion of the property in which she held the interest was complete under our own authorities. She was neither joint tenant nor tenant in common of the property in which her interest existed.   She was the owner until her debt was satisfied, and should be so treated.   No other course will preserve her rights; and,

when so considered, there can be no question but that the present action is correct, even in form.

There is nothing in the learning or teachings of the law requiring a person's property to be sacrificed in his or her attempt to enforce a just claim, in order that the nature or character of a claim may be classified, and the practice and form of action adopted and usually resorted to in such cases applied thereto. Litigation as at present conducted is too expensive, under our system of practice, to allow such a course to be pursued. In this case I think the record shows a fair trial has been had upon the merits. The jury have passed upon the facts, and the spirit of the law is with the plaintiff, and the judgment at the circuit ought not to be disturbed. Under the facts stated in the record, the rights of the plaintiff are in their nature equitable as well as legal, and, in my judgment, *assumpsit* is peculiarly an appropriate remedy in her case, and it is a reproach to the administration of the law which fails to secure such rights to her when she comes into court and asks its protection against the unwarrantable course pursued by these defendants.

The judgment should be affirmed, with costs.