## CASTNER v. DARBY.

1. CONVERSION—VALUE OF PROPERTY—EVIDENCE.

In an action to recover the value of chattels converted, evidence of the value placed upon them by the parties in a previous exchange of properties between them is competent to be considered by the jury.

2. CHATTEL MORTGAGES—FORECLOSURE—PURCHASE BY MORTGAGEE —VALIDITY.

3 Comp. Laws, § 9530, provides that, at any sale of property on foreclosure of a chattel mortgage, the mortgagee may fairly and in good faith purchase the same. A mortgagee in possession posted notices of foreclosure, but gave no direct notice to the mortgagor. On the day of sale no bidders appeared, and the mortgaged property, consisting of the furnishings of a hotel, though not gathered into one place, was sold as a whole to the mortgagee for much less than its value. *Held*, that the sale was void.

3. SAME—CONVERSION BY MORTGAGEE—ASSUMPSIT.

Where a mortgagee of chattels takes possession of the same under his mortgage, and refuses to surrender them to the mortgagor on demand, claiming title under an invalid foreclosure, the mortgagor may maintain *assumpsit* for their value.

Error to Ingham; Person, J. Submitted April 16, 1901. Decided September 25, 1901.

*Assumpsit* by Edward P. Castner against Lewis G. Darby to recover the value of chattels converted. From a judgment for plaintiff, defendant brings error. Affirmed.

*Black & Dolan*, for appellant.

*L. B. & H. M. Gardner*, for appellee.

MOORE, J. Prior to September 26, 1894, defendant kept a hotel known as the "Tivola House," now known

as the "Butler House," in the city of Lansing. He leased the hotel, but owned all the kitchen, dining-room, office, sleeping-room, and other furniture and fixtures in the hotel. In September he made an exchange of his furniture and fixtures with plaintiff for other property. The hotel furniture and fixtures were valued in the exchange at $1,200. To secure the payment of $239.46 of the purchase price, the plaintiff gave defendant a chattel mortgage upon all the hotel fixtures and furniture he had obtained from him. The mortgage contained the following provision:

"But, if default be made in such payment, the said Lewis G. Darby is hereby authorized to and shall sell at public auction, after the like notice as is required by law for constables' sales, the goods, chattels, and personal property hereinbefore mentioned, or so much thereof as may be necessary to satisfy the said debt, interest, and reasonable expenses, and to retain the same out of the proceeds of such sale; the overplus or residue, if any, to belong and to be returned to said Edward P. Castner."

After this exchange was made, the plaintiff kept the hotel for a time. He was not successful as a hotel keeper. He got behind with his rent. He finally arranged with the owner of the hotel to surrender possession, and the owner relinquished the amount due for rent. The defendant demanded possession of the mortgaged property, and, when objection was made to his taking possession, threatened to replevy the property. He was then permitted to take possession. He rented the hotel, and used all the furniture for some weeks, without taking any steps to foreclose his mortgage. He then caused notices of foreclosure to be posted, but did not give notice to the mortgagor of the sale. Upon the day of the sale no bidders appeared. There were several persons in and about the hotel. The officer having charge of the sale, and Mr. Darby, visited a number of the rooms of the hotel, but not all of them. The officer stated he was ready to sell the property in parcels or as a whole, but he did not actually put up any separate article, or the furniture in any par-

ticular room, for sale. The property had not been gath-
ered into one place, but was in the several places where it
was used during the running of the hotel. The officer
then offered all the property covered by the chattel mort-
gage for sale. The defendant bid $130 for it. There
were no other bidders, and it was sold to him for that
amount. When the plaintiff learned of the sale, he caused
a demand to be made upon the defendant for the property.
The defendant refused to comply with the demand. The
plaintiff sued him in *assumpsit* in justice's court, and
obtained a judgment. The case was appealed to the
circuit court. Upon the trial in that court the property
was valued by the witnesses at from $250, by the defend-
ant, to as high as $800, by another witness. The jury
fixed its value at $500 in their verdict. The case is
brought here by writ of error.

The court refused to give the following request:

" In finding the value of the goods in question, the jury
are not at liberty to consider what the plaintiff called them
worth in the trade he made with the defendant, as the
question to be determined is what they in reality were
worth at the time they were sold by McKale; and it can-
not be said they were worth more than their actual value
at that time, because, when the plaintiff traded for them in
September before, he estimated them at any particular
sum."

This refusal is said to be error. We cannot agree with
counsel. The court told the jury they must be confined to
the actual value of the goods. The estimate the parties
themselves had put upon the goods was in evidence. It
was not conclusive, but it was for the consideration of the
jury, in connection with all the other evidence and facts
and circumstances developed by the trial.

The court, after calling the attention of the jury to the
manner in which the sale was made, said to them:

"Originally, the owner of a mortgage was not permit-
ted to make purchase under the mortgage sale. It was
considered a matter of doubtful propriety whether a man
should buy at his own sale. The mortgagee makes the

sale, and in an early day it was considered a questionable thing that he should buy at his own sale; that it would not be fair; that the incentive to unfairness would defeat the object of the law, which was a fair sale. But a statute was passed in this State in 1877 which reads in this way:

" 'That, at any sale of property upon foreclosure of a chattel mortgage, the mortgagee or his assigns, or his or their legal representative, may fairly and in good faith purchase the property so offered for sale, or any part thereof.' "

"The statute describes the manner in which the mortgagee may purchase. It must be 'fairly and in good faith.' Now, that means that there must be sufficient notice before he can purchase. That means that the property must be offered in the right way before he can purchase. And I instruct you in this case, where it appears that the property was sold in one mass, being property of the kind described here,—hotel property,—and being purchased in by the mortgagee, according to his own testimony, at about 50 cents on the dollar of what he considered it fairly worth, that it was not a fair sale, nor such a sale as would be permitted. I instruct you that the sale was void."

This is said to be error.

Section 9530, 3 Comp. Laws, reads as follows:

"*The People of the State of Michigan enact*, that at any sale of property upon foreclosure of a chattel mortgage, or of a pledge, the mortgagee or pledgee, or his or their assignees or legal representatives, may fairly and in good faith purchase the property so offered for sale, or any part thereof."

In Jones, Chat. Mortg. § 808*a*, it is said:

"A mortgagee purchasing at a grossly inadequate price, or without giving requisite notice, obtains only a colorable title, and is accountable to the owner for the fair value of the property at the time of the appropriation. The owner may disregard the sale, and redeem the property. The burden is upon the mortgagee purchasing at his own sale under a power to show that the sale was fairly and openly made, in strict compliance with the power, and that the price paid was not so clearly and grossly inadequate as to raise a presumption of bad faith."

In Herm. Chat. Mortg. p. 507, it is said:

"The conduct and fairness of a sale by a mortgagee, and the rights acquired under it, are always open to investigation at the instance of the mortgagor. On this account a sale under judicial sanction is safer, and, where the amount is large, advisable. Such sales will be jealously watched, and upon the slightest proof of unfair conduct, or a departure from the power, will be set aside. Everything done by the parties to such sale calculated to prevent competition renders it void. A mortgagee selling under a power of sale in his mortgage will be held strictly responsible for any prejudice to the mortgagor arising from any deviation from the provisions governing the exercise of the power and the statute requisitions as to notice."

Under the facts disclosed by this record, we think the court was right in holding the sale was void.

It is strenuously urged that plaintiff has mistaken his remedy, and that *assumpsit* will not lie in such a case as this. In considering this branch of the case it is well to remember that defendant came into possession of this property by virtue of a contract,—that is, a chattel mortgage, made to him by the plaintiff; that he had sold the property, as mortgagee, to himself as an individual; and that upon demand he had refused to give the plaintiff possession of the property, and claimed to be the owner of it. The case comes directly within *Tuttle* v. *Campbell*, 74 Mich. 652 (42 N. W. 384, 16 Am. St. Rep. 652); *Newman* v. *Olney*, 118 Mich. 545 (77 N. W. 9); *Grinnell* v. *Anderson*, 122 Mich. 533 (81 N. W. 329).

The other assignments do not call for discussion. The court instructed the jury to deduct from the value of the property the entire amount of the chattel mortgage, and this was done.

Judgment is affirmed.

The other Justices concurred.