McDONALD *v.* YOUNG.

1. Actions—Waiver of Tort—Assumpsit.

The possession of a second-hand automobile by an automobile dealer originates in contract and not in trespass where he obtains possession lawfully in the course of a contract for the sale of another car whereby credit is to be given for the second-hand car, which is canceled by mutual agreement, and the dealer wrongfully withholds the second-hand car, and the tort may be waived and assumpsit maintained to recover the agreed price of the second-hand car.

2. Principal and Agent—Knowledge of Agent.

The knowledge of agents within the scope of their agency is the knowledge of the principal.

3. Appeal and Error—Election of Remedies—Waiver.

Recovery can be had for a tort under the common counts in assumpsit, and if no objection is made to the form of action until after all the evidence is in it will not prevail.

4. Election of Remedies—Assumpsit—Trover.

If no objection is made to the form of action in an action of assumpsit to recover a money judgment for the value of a second-hand automobile which defendant has wrongfully retained after cancellation of a contract for the exchange of a new car for the old car, both the question of title and right of possession may be tried as well as in an action

of trover on defendant's denial of ownership and possession.

5. SAME—TRIAL ON MERITS.

> There is an election of remedies precluding the bringing of an action of tort based upon the inconsistent theory that defendant was not the owner, but was in tortious possession of a second-hand automobile which he had turned in as part payment in an exchange for a new car, where the contract was canceled by mutual agreement and a deposit returned, and plaintiff maintains an action of assumpsit for the value of the second-hand car upon the theory that defendant became the owner of the car and was liable for the purchase price, and the case is tried on the merits and the judgment in defendant's favor is not appealed from.

Error to Wayne; Murphy, J. Submitted June 27, 1917. (Docket No. 63.) Decided December 27, 1917.

Case in justice's court by John E. McDonald against Mathew A. Young for the conversion of an automobile. There was judgment for defendant, and plaintiff appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed.

*Barbour, Field & Martin* (*Henry C. L. Forler,* of counsel), for appellant.

*Charles L. Mann,* for appellee.

STEERE, J. In the spring of 1916, plaintiff, a resident of the city of Detroit, negotiated with an agent of, and contracted to purchase from, defendant, who was in the business of handling Reo and Mitchell automobiles in that city, a new Reo—4 1916 car, the deal being evidenced in writing by the following order:

"Detroit, Mich., May 8, 1916.
"M. A. Young,
"Automobiles
"754-756 Woodward Avenue.
"You are hereby authorized to enter my order for one Reo—4 1916 automobile with regular equipment.

"1 Yale lock; 1 extra casing, tube and cover, for which I agree to pay the sum of eight hundred and seventy-five dóllars. Terms: $25.00, and 1914 Reo touring allowed as $435.00 on the signing of this order.

"Balance of four hundred and fifteen dollars ($415.00) when car is ready for delivery.

"Date of delivery, on or about May 20, 1916.

"J. E. McDonald,

"Signature of Purchaser.

"1342 E. Lafayette,

"Residence.

"M. A. Young, By F. H. Mutschler."

Mutschler was one of defendant's salesmen, and his authority is admitted. Indorsed thereon appear the words: "Canceled. Deposit returned." At the time this contract was entered into, plaintiff paid defendant the $25. He claimed that about the same time he also delivered through his own authorized agent, or agents, to Mutschler, defendant's authorized agent, the 1914 touring car referred to, which defendant denied. Such claim and denial resulted in this litigation between the parties. Owing, as defendant claimed, to inability of the Reo company to fill its orders promptly, the new car was not delivered to the plaintiff on or about May 20, 1916, and shortly after that time plaintiff commenced to press defendant for delivery. As time went on, he became more insistent, making inquiry by telephone and calling at defendant's place of business, until on June 29, 1916, he visited defendant's place and insisted that something definite be done. Being unable to get any assurances as to when his new car could or would be delivered, he states that he demanded his money back and they came to a definite understanding, that the $25 was returned to him, and he gave back his contract. He then left without saying anything about the 1914 touring car; but in a letter of the same date written by an attorney named Hoffman, of whom he claimed to have bought

the car, a demand was made upon defendant in plaintiff's name for $375, stated as the value of the car which it was claimed had been bought by and delivered to defendant in part payment for the new car according to the written agreement of May 8th. Defendant denied having the car or that he ever owned it.

On July 14, 1916, plaintiff commenced an action in assumpsit, claiming damages of $500 or under, specifying in his bill of particulars that the action was brought to recover "purchase price of one Reo touring car, 1914 model, $435." Defendant pleaded the general issue, and a trial was had in which, it was shown, the testimony of plaintiff and his two principal witnesses, Hoffman and an attorney named Geiger, was in its main features as upon the trial of this case. Apparently that case was tried on its merits, but the ground on which it was then decided is not shown. The concluding entry in the justice's docket states: "I thereupon render judgment in favor of the defendant and against plaintiff of no cause of action." Plaintiff took no appeal from this judgment, but subsequently Hoffman, as plaintiff's attorney, made demand upon defendant for possession of the car, and this action in a plea of trespass on the case was begun in justice's court. A declaration was filed setting up the contract between the parties of May 8th, payment of the $25 and delivery of the 1914 car to defendant under it, his failure to deliver the new car, return of the $25, demand for return of the 1914 car, noncompliance with the demand, and that defendant wrongfully detained, converted, and disposed of it to his own use, to plaintiff's damage of $500, etc. Defendant pleaded the general issue with notice, as special defense, of the former action for nonperformance of "the very same identical promises and undertakings," trial whereof resulted in a judgment from which no appeal was taken, and which

remained in full force and effect. From a judgment in favor of defendant, the case was removed by appeal to the circuit court of Wayne county, where it was retried by jury, resulting in a verdict and judgment in plaintiff's favor for $379.68.

Upon the assignment of error presented here, defendant's main contentions are that the court erred in refusing his request for a directed verdict on the ground that in the former action plaintiff elected his remedy, tried the case on its merits, took no appeal from the adverse judgment then rendered, which stands as *res adjudicata,* precluding him from maintaining this action; and on the further ground that plaintiff is not shown to have owned the car and cannot maintain this action because his tentative purchase of the car from a former owner to turn in as part payment for the new car purchased from defendant was contingent upon the deal for it going through, which by agreement of the parties was canceled.

The first proposition turns upon whether in the former case plaintiff mistook or elected his remedy. That action was in assumpsit, and this is in tort. If he could and did waive the tort he now complains of and sued in assumpsit, he elected his remedy, and the former judgment standing against him precludes this action.

If, as plaintiff claims, defendant had possession of this car and wrongfully withheld it, he nevertheless obtained possession lawfully. The relation of the parties out of which the claimed tort grew had its inception in contract. Defendant's possession did not originate in trespass. In such case, tort may be waived and assumpsit maintained. *Tuttle* v. *Campbell,* 74 Mich. 652 (42 N. W. 384, 16 Am. St. Rep. 652) ; *St. John* v. *Antrim Iron Co.,* 122 Mich. 68 (80 N. W. 998).

It is urged further in plaintiff's behalf that there was no waiver in the former case, which was a

straight suit on an express contract to recover the agreed price of the old car claimed to have been sold and delivered to defendant according to the terms of a written agreement between the parties, as plainly shown by Hoffman's letter to defendant and the bill of particulars filed in the case; that no demand for the car was made until late in August, 1916, following the former judgment, and no tort was committed until there was a demand and refusal. Plaintiff apparently adopted this theory as to time of the tort subsequent to filing his declaration in this case, for it charges that the car was "wrongfully detained, converted and disposed of" by defendant on or about June 29, 1916, which is the date when the contract was rescinded by mutual agreement of the parties and payment for the car demanded in writing by Hoffman as plaintiff's attorney.

That it was then rescinded in its entirety there can be no question. Plaintiff was annoyed by delay in delivery of the new car, says that they had "sort of made a monkey" of him, and, instead of insisting on performance, he demanded his money back, came to an understanding about it, and when his demand was complied with he surrendered his contract to them. He then made no further claim and left, without mentioning the old car, which he testified on cross-examination he never had possession of, had not paid for, did not know where it was stored, and, when asked if he ever owned the car, said, "I suppose that would be a question." He stated that he agreed to buy the old car from Hoffman, and of the occasion said:

"I wanted to get a Reo car, and they (Hoffman and Geiger) asked me if I would buy this car—if I would I would trade it in, and in that way they would dispose of my car, if I got a new car."

198—Mich.—40.

Neither plaintiff nor Hoffman ever had actual possession of this car. It was stored in a garage on Peterboro street belonging to a Mrs. Holmes during the time of these proceedings. As late as August 15, 1916, she offered through her attorney to deliver it to "the proper party" upon payment of $25 storage charges; it having been there for over five months. Prior to May 8th, Geiger had come into possession of the car as part of the assets of a bankrupt concern of which he was trustee and had it stored in Mrs. Holmes' garage, being then responsible to her for the rent. No other party connected with the case as witness or otherwise is shown to have had any business relations with her. Hoffman had bid in the car, on Geiger's suggestion, at an auction sale of the assets of the bankrupt concern; Geiger testified that it was then out of repair, and he continued the rent of the garage intending to have it repaired and then turn possession over to Hoffman. Hoffman apparently had not paid for it, as he testified that on a certain occasion after May 8th he asked Geiger if plaintiff had given him a check for the car, and he said, "No," but he offered to give him a check and he did not take it. Geiger testified on cross-examination:

"I filed a præcipe in the case in justice court and started the suit, and when the case came up I was there as a witness."

Which suit he had reference to is not stated. Some time before May 8th Hoffman decided he did not want to keep the car, and asked Geiger if he knew of any one who might buy it. Geiger introduced him to plaintiff, and it was arranged that he would take the old car at $100 less than the price he was to turn it in for, on the new car. Hoffman and Geiger were present at plaintiff's place when the contract of May 8th was made. They agreed to show Mutschler the car and deliver it to him. Geiger testified that he met

Mutschler the next morning and took him to the door of the garage where this car was stored, unlocked the door, and pointed it out, another car being there also, and handed him the keys of the garage, requesting him to take it away that day, as rent was only paid up to that night, and he said he would do so at a certain time soon. Mutschler testified that he was shown the car and given the key of the garage by Geiger so he could get it, but he did not then go there to get it, and told Geiger he would do so soon; that the sales manager told him to wait until delivery of the new car; that he never took it away, or went back for it, or unlocked the door of the garage; and when the contract was canceled he returned the keys to Mrs. Holmes as directed by Geiger, who had told him he got them from her and to return them when he took the car out.

In any aspect of this case, plaintiff could not recover unless he was entitled to possession of the old car, and he was not entitled to possession of it unless he had legally purchased and owned it, which he with some reason "supposed" would be a question. It was personal property of over $50 in value, which he said he had never paid for or had possession of, did not know where it was, or whether it was ever moved from where it was stored. He had no memorandum in writing of its purchase from Hoffman, and neither of them, so far as shown, from Geiger, who was yet in possession of it when this oral and suggestively contingent bargain was made for plaintiff to buy the old car to trade in on a new one. Conceding that by authorized acts of agency on the part of Hoffman and Geiger a constructive delivery to defendant's agent by Geiger operated intermediately to vest title in plaintiff, their knowledge within the scope of their agency was his knowledge, and they knew what the facts were if he did not.

Demand of payment for the car was made of defendant and refused before either action was brought. There was no room for misunderstanding as to plaintiff's contract for a new car being canceled, or defendant's denial and defense thereafter as to the old car. The object of both suits was the same—to compel defendant to pay for the car. Under the circumstances of this case, the second demand was in fact and purpose a repetition of the first, though made in different form to lay the foundation for a second action, in tort, which might have been tried out under the pleadings in the first, so far as this record discloses. The case was apparently tried on its merits, and no objection to the form of action is shown to have been made. Recovery can be had for a tort under the common counts in assumpsit, and if no objection is made to the form of action until after all the evidence has been introduced it will not prevail. *Boston, etc., R. Co.* v. *Dana,* 1 Gray (Mass.), 83.

Both actions were between the same parties over the same subject-matter, and the object of each was to recover a money judgment for the same property. Both the questions of title and right to possession could have been tried in that action as well as in trover on defendant's denial of ownership and possession. In *Jennings* v. *Sheldon,* 44 Mich. 92 (6 N. W. 96), this court said of an action brought to recover the value of certain stone:

"It was clearly shown that the Dean suit was brought to recover for the value of the stone, and that Sheldon assumed the defense of it. It was immaterial that the suit was in assumpsit. It may be that the circumstances of the taking of the stone were such that assumpsit could not have been supported if objection had been made (*Watson* v. *Stever,* 25 Mich. 386) ; but the parties were not bound to take that objection, and the title could as well be tried in an action of assumpsit as in one of trespass or trover."

If, as plaintiff asserts, the former proceeding was prosecuted by him through a trial to judgment upon the sole issue and theory that defendant was owner of the car and holden for its purchase price, that claim is totally at variance with his present contention that defendant was not the owner, but in tortious possession. The two positions are inconsistent and contradictory. The assertion of one involves negation or repudiation of the other. Having, as appears by the record, advisedly elected to litigate his contention of ownership upon its merits to a final judgment in the former case, plaintiff is not now in a position to repudiate that contention and treat defendant as a wrongdoer because not the owner. *Nield* v. *Burton*, 49 Mich. 53 (12 N. W. 906); *Farwell* v. *Myers*, 59 Mich. 179 (26 N. W. 328).

The judgment is therefore reversed, with costs, and a new trial granted.

KUHN, C. J., and STONE, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, J., did not sit.