## JOHNSON v. PEOPLE'S STATE BANK OF BEAVERTON et al.

District Court, E. D. Michigan, N. D. October 31, 1927.

No. 214.

1. **Chattel mortgages** ⊆=262(1)—**Chattel mortgagee must exercise reasonable diligence and good faith to obtain best price at foreclosure sale.**

A chattel mortgagee, conducting foreclosure sale under terms of mortgage, must exercise reasonable diligence and good faith in an endeavor to obtain the best possible price consistent with such diligence and good faith, especially where he becomes purchaser at the sale.

2. **Bankruptcy** ⊆=303(3)—**Evidence held to show that chattel mortgage foreclosure sale was not in good faith, entitling mortgagor's bankruptcy trustee to have it set aside as fraudulent (Comp. Laws Mich. 1915, § 11995; Bankruptcy Act, §§ 70a, subd. 6, and 70e [11 USCA § 110]).**

In suit by bankruptcy trustee to set aside a foreclosure sale under chattel mortgage on stock of merchandise given by bankrupt to bank, on which sale bank purchased mortgaged property, as authorized by Comp. Laws Mich. 1915, § 11995, evidence *held* to show that bank and its cashier, who was bankrupt's brother, did not exercise fairness and good faith in conducting sale, and trustee was therefore entitled to have it set aside as fraudulent, under Bankruptcy Act, § 70e (11 USCA § 110), or under section 70a, subd. 6, and to require bank and its cashier to account as trustees for benefit of bankrupt estate for value of property.

In Equity. Suit by Arthur E. Johnson, as trustee of Merle E. Wilt, bankrupt, against the People's State Bank of Beaverton and another. Decree for plaintiff.

Fixel & Fixel, of Detroit, Mich., for plaintiff.

John C. Shaffer, of Gladwin, Mich., for defendants.

TUTTLE, District Judge. This is a bill brought by the trustee in bankruptcy for the estate of Merle E. Wilt, bankrupt, against the People's State Bank of Beaverton, Mich., and Homer E. Wilt, as trustee for the stockholders of such bank, to set aside, as fraudulent, a foreclosure sale under a chattel mortgage given by the bankrupt to said bank on which sale the bank purchased the mortgaged property for the amount of the debt secured by said mortgage.

The material facts, as disclosed by the evidence taken in open court and as found and determined by the court, may be stated sufficiently for the purposes of this opinion as follows: On March 15, 1926, the bankrupt, who conducted a dry goods store in the small village of Beaverton, Mich., gave a chattel mortgage on his stock of merchandise and fixtures to the defendant bank, of which the defendant Homer E. Wilt, who was a brother of the bankrupt, was cashier, to secure a three months' promissory note bearing the same date and representing an indebtedness of the bankrupt to said bank in the amount of $3,500, representing money borrowed by him from the bank. The mortgage was promptly and properly recorded. I am satisfied that this indebtedness was actually and in good faith incurred, and that plaintiff is not entitled to have this chattel mortgage set aside as fraudulent or illegal, as prayed in the bill; and as such mortgage was executed and delivered more than four months prior to the time of the filing of the bankruptcy petition on which the bankrupt was adjudicated, such mortgage cannot be avoided as preferential. The prayers, therefore, of the bill asking to have the chattel mortgage itself declared void must be denied.

I have, however, considered all of the facts and circumstances surrounding the making of the mortgage and the conduct of the defendant Wilt relative to such mortgage in determining the validity and effect of the foreclosure sale thereunder, hereafter referred to, which also is attacked by plaintiff as fraudulent and invalid. The note secured by the chattel mortgage in question was renewed several times without the making of any payment in reduction thereof; the last renewal, secured by the same mortgage, being due on November 15, 1926. During all of the time just mentioned the bankrupt was in distressed financial circumstances and his precarious financial condition was known to his brother, the defendant cashier, who was also clerk of the village of Beaverton, in which capacity he had recorded the chattel mortgage arranged and received by him as such cashier. During these intervening months, the last-mentioned defendant received numerous inquiries from creditors and commercial agencies concerning the financial condition of his brother, and in an-

swering such inquiries he carefully and, as is clear from the testimony, including even that of himself, studiously and deliberately withheld information as to this chattel mortgage, with which he was so familiar. It is evident that his silence in this connection was actuated by his desire to avoid the injury to the mortgagor's credit which he knew such information would produce, and under the circumstances such silence must be regarded as concealment. The natural and ordinary result was, as he must, under familiar legal principles, be held to have intended, that the bankrupt succeeded in obtaining a considerable degree of credit and of merchandise, which the chattel mortgage required him to keep up to a value of twice the amount of the indebtedness secured by such mortgage. Finally, however, it became evident to the defendant cashier, who was the representative of the defendant bank throughout all of this period, and who was kept constantly and fully informed concerning the finances of the bankrupt, that the latter was hopelessly insolvent. Thereupon, more than four months having elapsed since the time of the execution of the chattel mortgage in question, the scheme was devised and carried out which, it was expected, would enable the defendants to enrich themselves at the expense of the estate of the bankrupt. Arrangements were first made for the transfer by the bankrupt of his automobile to his wife, which transfer was made on November 9, 1926, without any consideration, and obviously for the purpose of placing it beyond the reach of his creditors. He then owned no property of any substantial value other than the merchandise and fixtures covered by the chattel mortgage.

On November 15, 1926, the date of the maturity of the mortgage indebtedness already mentioned, at about noon, the defendants took possession of the mortgaged merchandise and fixtures and of the store in which they were located, closed said store, and posted notices of a foreclosure sale to be held at a stated hour on Saturday of the same week, which was November 20, 1926. What was done, as well as what was not done, in arranging for the foreclosure sale, clearly indicates a lack of honest desire on the part of the mortgagee to realize for the mortgagor's estate a surplus from the proceeds of the sale. No inventory of the mortgaged property was made. No advertising matter was circulated nor published. No notice was sent to the creditors of the mortgagor, although the existence of such creditors was well known to the defendants. At least one of such creditors, who happened to learn of the foreclosure during the five days (the minimum interval provided by the mortgage between the time of the posting of notices and the time of sale), and who inquired of the defendant bank for information on the subject, received, in response to such inquiry, such a pessimistic report concerning the prospects of success from any effort by him to protect the interests of creditors at the approaching sale as to discourage and dissuade him from making any such effort. The day selected for the sale, Saturday, was one on which traveling salesmen seldom visited the village where the sale was held. As might reasonably have been expected, only one person besides the mortgagee made any bid at the sale, and the circumstances surrounding the bidding of that person strongly suggest the conclusion that his presence and bidding were for the purpose of appearance rather than reality, and designed as a sham and pretense, to give the mortgagee the benefit of a dummy competitor. It is, therefore, not strange that the defendant bank, through its defendant cashier, succeeded in purchasing the mortgaged property for the amount of its claim, $3,700, which included the costs and expenses of sale and tax charges due, although it must have been evident to all concerned that the true value of such property was at least $2,000 more than the sum so bid, and that a correspondingly larger amount could and would have been realized if the sale had been fairly and properly conducted.

Any possible doubt on this score is removed by a consideration of the developments following the sale. Immediately after this sale, arranged and conducted by the mortgagee, at which such bank was the purchaser, a second sale of the same property and at the same place was arranged and conducted by the same mortgagee, at which it was not the purchaser, but the seller. This sale was quite differently planned and conducted. Advertisements were published in daily newspapers in nearby cities. An entirely different policy was adopted. Considerably more time was devoted to the sale. Special efforts were made, in various ways, to realize the utmost possible out of the sale. Sales at retail were made over the counters, in the store of the mortgagor where the mortgaged property was located. As a result of this diligent, active endeavor, the sum of $6,175.25 was realized from the purchasers at the sale. After deducting from this sum the amount of the indebtedness of the bankrupt to the bank and all of the expenses of

the sale, including the cost of posting the foreclosure notices, attorney's foreclosure fee, auctioneer's fee, tax charges, advertising expense, and incidental expenses, the defendant Homer E. Wilt has in his hands the sum of $1,957.83, which he claims to hold as trustee for the benefit of the stockholders in the defendant bank, pending the completion of a consolidation between that bank and a certain other bank, which consolidation is in process of completion.

[1] It is settled law that the mortgagee under a chattel mortgage, who conducts a foreclosure sale pursuant to the terms of such chattel mortgage, is bound to exercise reasonable diligence and good faith in an endeavor to obtain at such sale the best possible price consistent with such diligence and good faith, especially where such mortgagee becomes the purchaser at such sale. Castner v. Darby, 128 Mich. 241, 87 N. W. 199; 11 Corpus Juris, 707 et seq. It is at least doubtful whether, in the absence of a statute expressly authorizing it, a mortgagee in a chattel mortgage may become the purchaser at a foreclosure sale of such mortgage, although that question need not here be considered, as section 11995 of the Michigan Compiled Laws of 1915 provides that "at any sale of property upon foreclosure of a chattel mortgage, * * * the mortgagee * * * may fairly and in good faith, purchase the property so offered for sale."

[2] Nor is it necessary, on this record, to determine the question, on which the authorities are not uniform, on whom, in such a case, is imposed the burden of proof with respect to a showing of the fairness and good faith required, as this court is clearly satisfied and convinced in the present case that, without regard to the question of burden of proof, the mortgagee bank and its cashier representing it must be held to have failed to exercise the requisite fairness and good faith in connection with the sale here involved. Whether, therefore, this fraudulent sale be regarded as voidable in this suit as a fraudulent transaction within the meaning of section 70e of the Bankruptcy Act (11 USCA § 110), providing that "the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided," or as creating in the plaintiff, as trustee in bankruptcy for the bankrupt, title to a cause of action, derived from the bankrupt by operation of law, against the fraudulent mortgagee, within the meaning of section 70a, subdivision 6, of the Bankruptcy Act, vesting in such trustee the title previously held by the bankrupt in "rights of action arising * * * from the unlawful taking or detention of, or injury to, his property," it is clear that the plaintiff is entitled to have said sale set aside as fraudulent and void, and to require the defendants to account, as trustees for the benefit of the bankrupt estate, to the plaintiff herein for the value of the property so fraudulently disposed of.

As the value of this property, over and above the amount of the indebtedness and expenses with which the defendants are equitably entitled to be credited, is represented by cash in the hands of the defendant Wilt, realized as the direct proceeds of such property under circumstances sufficiently indicating that it fairly represents the value thereof in excess of the amount equitably allowable to the defendants, I reach the conclusion that the interests of justice and the equities of the parties will be adequately promoted and protected by directing the payment of said sum, $1,957.83, together with any interest earned thereon from the time of its receipt by the defendants to the time of its payment to the plaintiff, in full satisfaction of all rights and demands by the plaintiff and of his predecessors in right and title, from and against the defendants or either of them. A decree may be entered in accordance with the terms of this opinion, bearing interest at the rate of 5 per cent. per annum (the prevailing statutory rate of interest on such a decree in force in the state of Michigan) from the date of the entry of said decree to the date of payment thereof.